KAUFFMAN & RUNGE v. J. G. ROBEY ET AL.

(Case No. 1318.)

1. NEGOTIABLE NOTE — COLLATERAL SECURITY.— The transfer of a negotiable note as a collateral security for a pre-existing debt is in due course of trade and for a valuable consideration. Following *Liddell v. Crain*, 53 Tex., 555. The case is stronger for holding the assignee a *bona fide* purchaser, when, in addition to the pre-existing debt, money is advanced by him for the benefit of the apparent holder of the note.

2. NOTICE — PRINCIPAL AND AGENT.— Though a principal is chargeable with notice of all facts coming to the agent's knowledge while acting within the scope of his agency, he is not chargeable with notice of such facts if they come to his agent's knowledge while he is engaged in a transaction with which the principal has no concern.

APPEAL from Hunt. Tried below before the Hon. Green J. Clark.

Suit by Kauffman & Runge against J. G. Robey, on a note for $1,500, and to foreclose the vendor's lien on certain lands for which the same had been executed. The note was originally made payable to A. D. Robey or bearer, and came into possession of appellants in due course of trade before maturity.

When appellants brought suit to collect the note, A. D. Robey, the original payee of the note, intervened and claimed it, alleging that it had been procured by appellants through fraud, and that if they ever had any right to the possession of the same it was only to secure the payment of certain indebtedness of a firm composed of A. D. Robey and J. H. Cook, doing business under the firm name and style of J. H. Cook & Co., and that said indebtedness had been paid in full, and that, therefore, he was entitled to the note, and he asked for a foreclosure of the vendor's lien and judgment in his favor.

Verdict and judgment in favor of intervenor A. D. Robey.

The facts proved by appellants show that Wallace & Thurman held this note as collateral to secure a debt which they held against J. H. Cook & Co., and which they transferred to appellants, and this note, with the others, was transferred to appellants by Cook to secure this debt and the debt due appellants by J. H. Cook & Co., which were neither of them shown to have been paid.

Other facts are apparent from the opinion.

*D. Upthegrove* and *Perkins, Gilbert & Perkins*, for appellants.

*H. C. Jones*, for appellee.

WILLIE, CHIEF JUSTICE.—Among other charges given to the jury by the court below was one to this effect: If Cook was not in fact in possession of the note in controversy and was not the holder of it, but Wallace & Thurman were in possession of it, and that they delivered or caused it to be delivered to plaintiffs for a debt which Cook & Co. owed to plaintiffs, then the plaintiffs acquired no interest in the note for the $900 debt which Cook & Co. owed plaintiffs, unless Cook had authority from Robey to make such transfer; and if he had no such authority, the jury should find for the intervenor as to the said $900. This part of the charge is assigned as error by the appellants.

This charge was calculated to influence the verdict of the jury in favor of the intervenor, whether they believed his evidence or that of the plaintiff as to the kind of order from Cook under which Wallace delivered the note to Kauffman & Runge's agent.

As the jury did find for the intervenors and the testimony was conflicting as to this order, the accuracy of this charge must be tested upon the hypothesis that the plaintiffs' evidence on this question was true. Wallace, for plaintiffs, testified that the order to Wallace & Thurman specified the notes they were to turn over to Kauffman & Runge's agent, viz., Pyle notes and the $1,500 note in controversy. These were the same notes they had previously held to secure a debt of their own against Cook & Co. The $1,500 note was payable to A. D. Robey or bearer, and was not due at the date of the transfer. This note had been placed by Robey with Wallace some months before as a collateral to secure the debt of Wallace & Thurman against Cook & Co., with the understanding that the note was Robey's individual property, and was not to be used to pay W. & T.'s debt unless they failed to collect it from Cook, and the latter

was to know nothing of its existence or whereabouts. At the time this transaction took place Wallace was an agent for the plaintiffs in this action. Cook had come to Terrell about the time the transfer took place to represent the interests of Cook & Co., consisting of Robey and himself, at a meeting of their creditors. The note then was still in the hands of Wallace & Thurman as a collateral for their said debt. It was proposed by Cook, ostensibly representing his firm in the settlement of debts, though not in manual possession of the note, that if K. & R., to whom Cook & Co. were also indebted, would pay the debt for which this note and two others were collaterals, they (K. & R.) should have those collaterals to secure not only the new demand thus created, but that already due them. Here was a case of the transfer of a note payable to bearer by the apparent owner, as a collateral for a pre-existing debt and another debt just then created.

This court has already held, in accordance with the weight of American authority, that the transfer of a negotiable note as a collateral security for a pre-existing debt is in due course of trade and for a valuable consideration. Liddell *v.* Crain, 53 Tex., 555, and authorities cited.

The case is much stronger for holding him a *bona fide* purchaser when, in addition to the pre-existing debt, money is advanced by the assignee for the benefit of the apparent holder of the note. Bank *v.* Crow, 60 N. Y., 85. Kauffman & Runge occupied this position and were entitled to collect the note and apply the proceeds to the payment of the amount due them, holding the balance in trust for the intervenor (Tooke *v.* Newman, 75 Ill., 215), unless they had notice of the circumstances under which the note was placed with Wallace by Robey, and the relation in which these parties stood towards each other at the time of the transfer. It is not pretended that Shaw, who was acting for Kauffman & Runge at that time, had any notice whatever of these circumstances. The only notice ever had by Kauffman & Runge was such as arose from the fact that Wallace was acting as their agent at the time he took this note to secure the debt due his own firm. Unless such facts as came to his knowledge whilst securing the debt of his firm with the note in suit as a collateral is chargeable to the plaintiffs, and they are bound by it in negotiating for the assignment of the note some months afterwards, they are *bona fide* purchasers of the note.

That a principal is chargeable with notice of all such facts as come to his agent's knowledge, whilst acting within the scope of his agency, is well settled. Jones *v.* Banford, 21 Iowa, 217; Fulton

Bank *v.* Canal Co., 4 Paige, 127; Ewell's Evans on Agency, 164; Le Neve *v.* Le Neve, 2 Lead. Cases in Eq., pt. 1, 167, 168.

That he is not chargeable with notice of such facts if they come to the knowledge of his agent whilst engaged in a transaction with which the principal has no concern is equally well settled. See authorities cited in Le Neve *v.* Le Neve, 2 Lead. Cases in Eq., 179 *et seq.*

One of the reasons upon which the rule rests is that when the agent is under obligation to communicate his knowledge to his employer, the latter is bound, because if the agent has done his duty he has imparted the information; and if he has not, the party who trusted him is the one to suffer for his neglect. Ewell's Evans on Agency, 163.

But a party is not presumed, nor is he bound, to communicate to another facts which he learns in a transaction of his own or of a different person; and much less where, in such transaction, he was acting adversely to the interests of the person sought to be charged with notice. Hence, in all such cases, the presumption of notice to the principal does not obtain. Winchester *v.* Susquehanna R'y Co., 4 Md., 231, 239; La Farge Ins. Co. *v.* Bell, 22 Barb., 54; McCormick *v.* Wheeler, 36 Ill., 114.

Another reason given for the rule is that facts learned in one transaction by a party are not presumed to be present in his mind when engaged in a totally different transaction. The law does not presume that what is once known will always be present in the memory. This rule has sometimes been applied as well to parties when acting for themselves as when acting through the agency of others. Boggs *v.* Varun, 6 W. & S., 469, 473. It is still less to be presumed that such knowledge will be present at a period long subsequent to the date when it was acquired, either to the principal or to an agent different from the one who originally obtained notice of it and in a wholly different transaction. Hence, under such circumstances, it has been generally, if not always, held that the knowledge obtained in the first transaction is not chargeable in the second. See authorities cited above.

Applying these principles to the present case, we find that, although Wallace was agent of Kauffman & Runge when the $1,500 note was placed with him, yet he obtained that note whilst acting for himself and partner, and not in any matter in which he was acting for the plaintiffs. Moreover, it was in antagonism to the interest of his principals that he should obtain so large a collateral to secure his small debt, and thus withdraw a great amount

of the individual property of one member of the failing partnership and place it where it was beyond the reach of his principals and the other creditors of the firm for his own benefit.

The transfer of the collaterals to plaintiffs took place many months after this note was placed with Wallace, and plaintiffs were in this matter represented by a different agent, Wallace's connection with them having ceased long before that time.

We think, therefore, that plaintiffs were not chargeable with notice of the fact that the note was the individual property of Robey, or of the conditions under which it was deposited by him with Wallace. That if the plaintiffs' evidence was true, the person recognized by the holder of the note as having control over it transferred it to them for a valuable consideration, viz., the payment of $332, and as collateral to secure another and pre-existing debt of about $960. That they had a right to hold the note till the purposes for which it was deposited were accomplished or the whole debt was paid, and were not bound to surrender it upon the payment of the $332 alone. That the charge of the court before recited, in so far as it was in conflict with this view of the case, was erroneous, and calculated to produce a verdict for the intervenors, whether the jury gave credence to his evidence or that of the plaintiff. The remaining assignments bring to our attention no error of any importance and it is not necessary to consider them. The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered November 6, 1883.]