### S. R. TAYLOR ET AL. v. R. C. CALLAWAY ET AL.
#### No. 291.

1. **Private Corporation—Notice.**—A corporation is not charged with notice that a promissory note is a lien on land by proof that before the organization of the corporation the holder of the note so notified a person who became a stockholder in the corporation and an agent thereof at a subsequent time when the corporation acquired an equity in the land.

2. **Non-Negotiable Note—Purchaser—Notice.**—The transferree of a non-negotiable note, secured by a lien on land, while charged with notice of any right, equity, or defense in favor of the maker as against the payee, is not charged with notice of an equity claimed in the land by an outside person in no way connected with such note.

3. **Unrecorded Vendor's Lien—Notice.**—Where, upon the sale of land the deed recites all the consideration cash, but notes are given for part of the purchase money, no vendor's lien being reserved in the deed or notes, neither of which indicate that the notes were given for the land, one who subsequently acquires the land without notice of such notes takes it discharged of any equity in favor of the holder thereof.

4. **Secret Equity—Legal and Equitable Title—Innocent Purchaser.**—Where the legal title and the apparent equitable title become vested in an innocent bona fide purchaser, who has no notice of a secret equity claimed by remote vendor, the title passes to such innocent purchaser stripped of such secret equity.

5. **Vendor's Lien—Corporation—Ultra Vires.**—Where one buys land without knowledge of outstanding purchase money notes of a former vendee, and his note is taken for a part of the purchase price secured by vendor's lien, and is deposited with a domestic corporation as collateral security for a loan, the owner of the outstanding notes can not, in an action to foreclose, set up that the transaction of the corporation was not a loan, but a discount, and for that reason ultra vires, unlawful, and void.

6. **Assignment of Error.**—An assignment, specifying an error not fundamental, not filed below or contained in the transcript, will not be considered.

APPEAL from Navarro. Tried below before Hon. RUFUS HARDY.

*John D. Lee* and *Callicut & Callaway,* for appellants.—1. Notice to the agent is notice to the principal; and if the loan agency was chargeable with notice through Bright, its president, had he personally made the loans, then it would be equally chargeable though the loan may have been made by an agent, who in fact knew nothing of the facts which constitute the notice. A result of law, not of fact. The Distilled Spirits, 11 Wall., 356; Suit v. Woodhall, 113 Mass., 391; Webb's Rec. of Title, sec. 238; Mora. on Corp., sec. 540b; Id., p. 511, note 2; Bank v. Chase, 72 Me., 226; Hart v. Bank, 33 Vt., 252; Wade on Notice, 687, 688.

2. A non-negotiable instrument is entitled to no more equities in the hands of a purchaser for a valuable consideration than in the hands of the original payee. 1 Wait's Act. and Def., 561; Walker v. Wilson, 79 Texas, 185; Weathered v. Smith, 9 Texas, 623.

3. No domestic corporation organized under the laws of this State is permitted to exercise banking or discounting privileges; and a contract made by such a corporation in which it exercises such privilege is not only ultra vires, but is also illegal, violative of the Constitution and laws of the State, and is absolutely void, and may be attacked at any time, directly or collaterally, by any one interested, however remotely, therein. Const., art. 16, sec. 16; Anderson v. Building and Loan Assn., 4 Ct. App. C. C., sec. 174, p. 249; 16 S. W. Rep., 298; 53 Am. Dec., 742; Statement v. Bank, 14 Ala., 677; Bank v. Johnson, 14 Otto, 276; Munn v. Com. Co., 15 Johns. (N. Y.), 44; Ins. Co. v. Ely, 2 Cow. (N. Y.), 699; Loan Co. v. Towner, 13 Conn., 259; Bank v. Baker, 15 Ohio St., 85; Talmadge v. Pell, 7 N. Y., 328; Bank v. Benedict, 1 Hall (N. Y.), 556; Weekler v. Bank, 42 Md., 592; Pape v. Bank, 20 Kan., 440; Freeman's Admrs. v. Britton, 2 How. (N. Y.), 206.

*McLellan & Prince,* for appellees.—A principal is not charged with notice of facts that come to the knowledge of his agent while engaged in a transaction with which the principal has no concern, and a fortiori he is not charged with notice of facts that came to the knowledge of his agent in an affair of his own, prior to the existence of his agency. Kauffman & Runge v. Robey, 60 Texas, 308; Le Neve v. Le Neve, 2 Lead. Cases in Eq., part 1, 167; Ewell's Evans on Agency, 163; Meuley v. Jacob Zeigler, 23 Texas, 88; Miller v. Schneider & Davis, 2 Ct. App. C. C., sec. 371; Sayres v. T. L. and M. Co., 78 Texas, 244.

The equities that can be urged against a non-negotiable instrument are those only that the maker could have urged against the payee. Set off, tender, accord, and satisfaction, payment in whole or in part, and such defenses against the note itself, are the only equities. A non-negotiable instrument, given by the vendee to the vendor, does not put either the vendee or a purchaser of the note on notice of an

outstanding title.　Watson v. Flanagan, 14 Texas, 354; Walker v. Wilson, 79 Texas, 185.

Mr. Vaughan bought the land as an innocent purchaser for value, without notice of appellant's unrecorded lien, and took the land discharged of such lien.　Such unrecorded lien was void as to Vaughan, and this appellee coming into possession of the $2000 note for a valuable consideration, executed by Vaughan, gets the benefit of Vaughan's bona fides and innocence.　Rev. Stats., art. 4334; Wade on Notice, 2 ed., sec. 62; Lancaster v. Maxwell, 3 Ct. App. C. C., 404; Mays v. Lewis, 4 Texas, 38.

LIGHTFOOT, CHIEF JUSTICE.—1.　On November 26, 1883, appellant Sallie R. Taylor, being the owner in her own separate right of the land upon which the lien is sought to be foreclosed in this suit, conveyed the same, jointly with her husband, to R. C. Callaway, reciting in the deed a cash consideration of $2250.　In fact, however, there was only $100 in cash paid at the time of the trade, and said Callaway executed to said Taylor and wife, on December 3, 1883, four promissory notes for $300 each, and one promissory note for $200, said notes being payable on the 1st day of January of each year thereafter. One of the notes is as follows, and is given to show the form of the notes:

"CORSICANA, TEXAS, December 3, 1883.

"By the first day of January, 1887, I promise to pay to John N. Taylor and Sallie R. Taylor, or bearer, the sum of three hundred dollars, with ten per cent from date.

[Signed]　　"R. C. CALLAWAY."

There was no vendor's lien reserved, either in the notes or deed, nor did either refer to the fact that the notes were given for the land.

2.　On November 30, 1883, said R. C. Callaway obtained a loan of $850 from Bright & Damon, to whom he executed his note of that date for said amount, due December 1, 1888, and in order to secure the same, executed to H. G. Damon, trustee, a deed of trust upon the land in controversy, which was duly recorded December 3, 1883.　At the time of such loan and the execution of said deed of trust, said Bright & Damon had notice that the purchase money had not been paid to appellants by said R. C. Callaway.

3.　In September, 1884, J. N. Taylor deposited the notes executed to himself and wife by Callaway with S. J. T. Johnson, to secure the price of a pair of mules, and Callaway paid enough on them to pay for the mules, also some other partial payments, and afterwards, on an order of Taylor and wife, the notes were delivered by Johnson to said R. C. Callaway.

4. On November 3, 1884, R. C. Callaway sold the land to said S. J. T. Johnson, he agreeing in the trade to pay off the note for $850 previously executed by R. C. Callaway to Bright & Damon, and paid the balance of the purchase price in other ways. Johnson testified, that at the time of his purchase he had no notice of any other lien on the land or claim thereto; but the verdict of the jury does not support this theory, and we must find therefrom that Johnson did have notice.

5. In December, 1884, Bright & Damon, who were then the owners of the $850 note executed by R. C. Callaway, and secured by a mortgage on the land, assisted in organizing the Texas Loan Agency, a corporation, took stock in said corporation, and transferred said note to the same. The note was afterwards paid off by Johnson.

6. On December 8, 1885, said S. J. T. Johnson sold the land to W. M. Vaughan, giving him a bond for title, placed him in possession and took his non-negotiable notes for the purchase money; and Vaughan has remained in possession ever since. In May, 1887, Johnson made a deed to Vaughan for the land, and took new notes, which were negotiable, and having borrowed about $3500 from the Texas Loan Agency, he (Johnson) deposited with said loan agency as collateral security, among other notes, the notes of Vaughan given to him as purchase money for the land, and said notes are now held by said loan agency.

7. From the verdict and judgment, we find that at the time Bright & Damon loaned R. C. Callaway the $850 on the land, they had notice of plaintiffs' claim. At the time Vaughan bought the land from Johnson he had no notice of such claim, and at the time the Texas Loan Agency became the owner and holder of such notes, they had no such notice.

8. Johnson still owes the Texas Loan Agency about $2230, and said loan agency holds collaterals on said debt amounting to about $7622—including the Vaughan notes, for about $2000 and interest.

The plaintiffs below seek judgment upon the notes originally executed by R. C. Callaway to them, and to foreclose a vendor's lien on the land. The court, on November 20, 1891, rendered its judgment in favor of plaintiffs against R. C. Callaway for the amount of said notes executed by him to plaintiffs according to their tenor and effect, with a foreclosure of the vendor's lien on said land; but subject to the superior rights and lien of the Texas Loan Agency to the extent of the Vaughan notes held by said loan agency, and the superior rights of W. M. Vaughan, and that plaintiffs recover their costs against defendants, except said Vaughan and the Texas Loan Agency, and that said last named two defendants recover their costs of plaintiffs; from which judgment plaintiffs have prosecuted this appeal. The other facts necessary for a decision of the case will be given in our opinion.

*Opinion.*—The first assignment of error is as follows: "The court erred in holding that the Texas Loan Agency was without notice of plaintiffs' lien on the land at the time it loaned the money thereon to S. J. T. Johnson, and in so charging the jury."

J. N. Taylor, one of the appellants, testified, that he went to W. R. Bright, who was then a member of the firm of Bright & Damon, and showed him the notes sued on, and told him that they were given by Callaway for the purchase money for the land, and offered to sell them to him. This was before the organization of the Texas Loan Agency. Bright testified, that he had some recollection of Taylor's showing him the notes and offering to sell them, but they were plain individual notes of Callaway, and he did not want them; he does not remember anything of his saying they were vendor's lien notes, and had forgotten all about it until he heard Taylor testify on the stand. There was no testimony that any officer or agent of the Texas Loan Agency had notice of such vendor's lien notes of plaintiffs at the time said loan agency procured the Vaughan notes from Johnson. Even if the testimony of J. N. Taylor should be taken as true, that he notified W. R. Bright before the creation of the Texas Loan Agency, and said Bright was an agent of such corporation at the time it procured the Vaughan notes, still, that would not charge the corporation with notice. In the case of Kaufman v. Robey, 60 Texas, 310, the court says: "That a principal is chargeable with notice of all such facts as come to his agent's knowledge, whilst acting within the scope of his agency, is well settled. Jones v. Bamford, 21 Iowa, 217. * * * That he is not chargeable with notice of such facts, if they come to the knowledge of his agent whilst engaged in a transaction, with which the principal has no concern, is equally well settled." In that case, the reason of the rule is so fully and thoroughly discussed, that we regard the question as authoritatively settled.

2. The second assignment of error is as follows: "The court erred in holding that the Texas Loan Agency was an innocent purchaser of the Vaughan notes and entitled to protection as such, because said note is a non-negotiable instrument, and came into the hands of the Texas Loan Agency after maturity, through Johnson, whom the jury found had notice."

It is true that the first note executed by Vaughan to Johnson for $2000 was non-negotiable, but that subsequently there were other notes which were negotiable, executed and delivered to the Texas Loan Agency, which were a vendor's lien on the land, before they had any notice of plaintiffs' claim.

R. E. Prince testified as follows: "When Johnson got the $3500 loan, the fact was apparent from Johnson's application that there was a bond for title note (this was the Vaughan $2000 note). Before I had notice of this suit, I demanded of Johnson the new notes. I had learned

of the new transaction and of the new notes (the second set), and really thought we had them."

The fact was, that a third transaction concerning the same land between Johnson and Vaughan had taken place, and a third set of notes given, and this third set of notes was turned over to Prince under Johnson's promise to turn over the second set. The third set of notes was executed after notice of this suit, but the second set was executed before notice. "And when Vaughan came in the first time after his notes was my first information that we did not have the second set of notes; we had the bond for title note, and the third set."

By the transfer of these vendor's lien notes to the Texas Loan Agency, it obtained an equity in the land in the hands of Vaughan to the extent of the notes so procured by them. Vaughan was an innocent bona fide purchaser of the land without notice, and the loan agency was correctly held to be an innocent bona fide incumbrancer without notice. Appellants had failed to give notice in their deed to Callaway of their claim lien; they had failed to record their notes, and even if they had been recorded, they did not show any lien, or even that they were given for the purchase money. Rev. Stats., art. 4332.

But to concede that the loan agency only held the non-negotiable note, how could that benefit appellants? How far would it be notice to such loan agency? The purchase by the Texas Loan Agency of the note of Vaughan, even if it was a non-negotiable note, would only put such loan agency on notice of any outstanding equity between the payor and payee of the note, and would not extend to notice of a collateral fact affecting the security of the note, in favor of an outside party. If there was any equity or right or defense in favor of the maker of the note (Vaughan), as against his payee (Johnson), the transferee of a non-negotiable note would be charged with notice of such right or equity or defense in favor of such maker; but this doctrine does not extend so far as to include notice of a claimed equity in the land in favor of an outside party in no way connected with such note.

Mr. Wade says: "One of the incidents of assignments of demands not recognized as negotiable, according to the law-merchant, as well as overdue negotiable paper, is, that the assignee takes subject to all equities subsisting between the parties at the time. The debtor is entitled to all credits for payments, as well as all setoffs which he may have against his original creditor. * * * But after the debtor has received notice of the assignment of the demand, he can not discharge any portion of the indebtedness by payment to the assignor. Nor can he acquire any defense to an action for the debt assigned, as between himself and the assignor." Wade on Notice, secs. 431, 432.

This is the extent to which the doctrine of notice is carried by a non-negotiable instrument.

3. The third assignment is, that the court erred in not holding a portion of the claim of the Texas Loan Agency barred by limitation. The maker of the notes (Vaughan) having executed new notes within the four years, in lieu of the original, and such new notes having been transferred to the Texas Loan Agency, the statute of limitation does not apply.

4. The fourth assignment is as follows: "The Texas Loan Agency acquired no lien to the injury of the plaintiffs by its acquisition of the Vaughan $2000 note. And having acquired no right superior to the plaintiffs' at the time it parted with the consideration (the money loaned Johnson), even if it be held that Johnson's possession of the subsequent notes was the possession of the loan agency, it can not avail; first, because if Johnson was the agent of the agency to procure and hold the notes, then it had notice before it came into possession by virtue of Johnson's notice; second, because having no superior lien to plaintiff, they parted with no consideration in the procurement of these notes."

(1) Vaughan being an innocent bona fide purchaser of the land from Johnson, without notice, actual or constructive, of plaintiffs' claim, plaintiffs certainly have no right to enforce their claimed vendor's lien against the land in his hands. Plaintiffs in November, 1883, sold the land to R. C. Callaway, taking $100 in cash, and his personal notes for the balance, and executed to him a deed which shows upon its face that the purchase money is paid in full. Neither the deed nor notes indicate in any manner whatever that the notes were given for the purchase money, or that they are claimed to be a lien on the land, or intended as such. If there was a secret equity between the parties, of which the remote purchaser (Vaughan) had no notice whatever, it is difficult for us to see in what way plaintiffs are to enforce a lien against the land in the hands of Vaughan, even if it was conceded that the Texas Loan Agency had notice of their claimed equity. The innocence of Vaughan is a full protection to him as against this claimed secret equity, and they can not enforce it against the land in his hands. The points raised in this and other assignments of appellants might with some force be urged in favor of Vaughan; but he is making no such claim. The Texas Loan Agency having acquired the Vaughan notes for value, and its lien to the extent of the purchase money still due by Vaughan not being contested in this appeal by him, there is no question in the case of any agency on the part of Johnson.

(2) Appellants certainly made the trade with R. C. Callaway, trusting implicity in his honesty. Not only this, but after they deposited the notes of Callaway with Johnson as security for a pair of mules, and after the mules had been paid for, more than a year after the trade, they gave an order to Callaway on Johnson for his own notes, and the notes were left in Callaway's hands as depositary. The land

was mortgaged by Callaway to Bright & Damon for $850, and then sold to Johnson, who paid the purchase money in full, and who then sold and conveyed the land to Vaughan, who had no notice, actual or constructive, of plaintiffs' claim, and Johnson then transferred the notes, for a valuable consideration, to the Texas Loan Agency, which had no notice, actual or constructive, of such claim. Here the full legal and equitable titles are both vested in innocent parties, and the claimants of a remote secret equity can not prevail against them. When the legal title, and the apparent equitable title, became vested in an innocent bona fine purchaser who has no notice of a secret equity claimed by a remote vendor, the title passes to such innocent purchaser stripped of such secret equity.

5. The fifth assignment of error is as follows: "The court erred in holding the contract, whereby the Texas Loan Agency acquired the Vaughan notes, valid; it being shown that the Texas Loan Agency is a domestic corporation, chartered under the laws of Texas, and that the transaction was a discount, and being such, was ultra vires, unlawful, and void, and no valid lien was ever acquired on the land involved."

(1) The lien on the land in controversy was created by virtue of the sale from Johnson to Vaughan, and not by reason of the loan from the loan agency to Johnson. It is true that the title of the Texas Loan Agency to the vendor's lien notes was acquired by virtue of a loan from the agency to Johnson for $3500, and these notes were deposited by Johnson as collateral security. Suppose, for the sake of argument, it was conceded that the $3500 loan from the Texas Loan Agency to Johnson was void, and the agency had no title to the Vaughan notes, still, under the present state of appellants' pleadings, could appellants be subrogated to the rights of Johnson in the vendor's lien notes against Vaughan, who had no notice, and enforce their lien against the land in his hands? If they can not enforce their claimed lien against the land in Vaughan's hands, by what right can they step in between the loan agency and Vaughan? The loan agency is seeking nothing as against the appellants, and unless they have valid rights against Vaughan, they can not be heard to question the lien or equities which may exist between the others.

(2) The pleading of appellants does not ask that they be subrogated to any of the rights of Johnson in the Vaughan notes in the hands of the State Loan Agency, and even if it did, it is questionable whether the doctrine of subrogation can be carried so far; especially when it appears that Johnson bought for value, and paid the purchase price in full, and the loan agency is an innocent holder of the notes. If the land was still in the hands of Johnson, and if he bought with notice of appellants' claim, their lien might be foreclosed against it in his hands; but when he sold it to an innocent purchaser who had no notice

of plaintiffs' claimed secret equity, even if the notes were still in Johnson's possession, in the present condition of the pleading, would appellants have the right to cancel the trade between Johnson and Vaughan? It certainly could not interfere with the vested rights of Vaughan, he being an innocent purchaser. Could plaintiffs undertake to foreclose Johnson's lien against Vaughan, or to exercise any right whatever against Vaughan?

In 3 Pomeroy's Equity Jurisprudence, section 1253, page 1930, note 1, it is said: "The premises subject to the lien in the hands of the original grantor, A, being conveyed to a second grantee, B, who is a bona fide purchaser without notice, if the purchase money from B to A is still unpaid, the original grantor's lien may, it seems, be enforced against it—as a fund substituted in place of the land." And refers to Lench v. Lench, 10 Vesey, 511. An examination of that case does not seem to confirm the doctrine. But recognizing the equitable principle there announced, that the original grantor by proper pleading may follow the note as a representative of the land, where the latter has been conveyed to an innocent purchaser, the purchase price being still unpaid, still, in order to do this, it would seem that there must be proper pleading asking to follow the note in lieu of the land. We know of no authority going further than this.

(3) These mooted questions of equity it is not necessary for us to determine in order to reach a satisfactory determination of the issues really made by the pleading and proof in this case. Johnson, the party who entered into the contract with the Texas Loan Agency whereby it loaned him $3500, taking the Vaughan notes as collateral security, has not set up or claimed on this appeal that the transaction with the loan agency was ultra vires or illegal; in fact, the $3500 note is one which has nothing whatever to do with the Vaughan notes, except in so far as the latter were deposited as collateral security for the former. But if Johnson were here claiming the invalidity of the transaction with the loan agency on the ground that the contract was ultra vires, he could not be heard to raise the question, for the reason that, having obtained the benefit of the contract, he would be estopped from denying the power of the Texas Loan Agency to loan the money. Bond v. Terrell Manufacturing Co., 82 Texas, 309, and authorities there cited; Bank v. Matthews, 98 U. S., 621; Smith v. White, 25 S. W. Rep., 809; Keys v. Building and Loan Assn., 25 S. W. Rep., 809.

Can appellants, who are not connected in interest, directly or remotely, with the $3500 note of Johnson to the loan agency, or the transaction out of which the note was given, be heard to set up that such transaction was ultra vires, or that it was illegal? We know of no legal ground upon which such a contention can be successfully maintained

6. The sixth assignment is upon the ruling of the court in entering judgment for defendant, the Texas Loan Agency, on the findings of the jury. We have fully discussed the different questions growing out of the findings of the jury, and upon which our conclusions are based. They are believed to be amply sufficient to sustain the judgment.

7. Appellants submit in their brief "their first supplemental assignment of error," that the court erred in failing to submit to the jury the question of collusion and fraud between Callaway, Johnson, and Bright to defraud plaintiffs of their lien on the land in controversy.

(1) This not being a fundamental error, and the assignment not having been filed below or contained in the transcript, it can not be considered. The brief of appellants should be confined to the distinct specifications of error contained in the assignment of errors, or to such fundamental errors of law as are apparent in the record. Rules 23 and 29.

(2) Even if this assignment could be considered, the court would not reverse a cause for a *failure* of the court to charge the jury upon a given point, unless the matter was called to the attention of the court below, and it refused to charge upon it. If appellants desired the question of fraud presented, they should have requested a special charge upon that subject. Ford v. McBryde, 45 Texas, 498.

(3) If a question of a collusion between Callaway, Johnson, and Bright to defraud had been presented, unless appellee, the Texas Loan Agency, was connected with such collusion, it could not be affected by it. The judgment below not being objected to by any party thereto except appellants, we only consider the question presented by them.

The judgment is affirmed.

*Affirmed.*

Delivered May 2, 1894.


ON MOTION FOR REHEARING.

LIGHTFOOT, Chief Justice.—We have carefully examined the questions presented on motion for rehearing, and have been greatly aided by the able and exhaustive briefs and arguments of both parties.

1. Upon a careful review of the testimony, it may be that in the original opinion the quotation of the testimony of the witness Prince was not accurately made; but having carefully examined the statement of facts (we having taken the quotation of the evidence from the statement in appellees' brief, which had not been objected to, but apparently acquiesced in by appellants), we think that from the whole testimony the conclusion of the jury, that the loan agency had no notice of appellants' claim at the time it obtained its notes, is supported by the evidence; and while there is some confusion and conflict in the testimony, yet we think that it fully appears that at the time of this suit

the loan agency had the original notes, and at least one set of the nego-
tiable notes executed by Vaughan to Johnson.

2. Appellants present the case of Rawles v. Perkey, 50 Texas, 311,
as deciding the question involved in their favor. We have carefully
examined that case, and find nothing to change our views as heretofore
expressed. In that case the court decided that a purchaser without
notice of a prior vendor's lien, taking a deed, paying a part of the pur-
chase money, and executing notes for the balance, is a bona fide pur-
chaser to the extent of the purchase money paid by him, and that the
bona fide holder of such notes, who had no notice of the first vendor's
lien, would also be protected to the extent of such notes. That rule
was applied in this case, the court holding that Vaughan, the purchaser,
had no notice of appellants' claim at the time of his purchase; and
that the Texas Loan Agency, when it acquired the notes from Johnson,
had no such notice. See also Russell v. Kirkbride, 62 Texas, 455; Cam-
eron v. Romele, 53 Texas, 244.

The other questions raised in appellants' motion and argument have
been fully discussed in the original opinion.

The motion is overruled.

                                                          *Overruled.*

Delivered June 27, 1894.