## H. C. FERGUSON ET AL. V. JOEL MCCRARY.

### Decided February 23, 1899.

1. **Judgment—Foreclosure of Vendor's Liens—Decedent's Estate.**

A judgment which merely forecloses a vendor's lien upon real property without including any personal award against a decedent's estate which is the owner of the equity of redemption, is not required to be certified for payment to the probate court.

2. **Same—Clerical Error.**

An error in the court's findings, in stating the land to be in a county other than that in which the suit is brought, will not invalidate a judgment foreclosing a vendor's lien where the evidence shows the land to be in the proper county and makes it apparent that such recital was a clerical error.

3. **Same—Notice to Tenant—Attornment—Parties.**

A secret attornment of a tenant from one landlord to another pending a suit to foreclose a vendor's lien of the land in his possession does not of itself charge notice of the latter's claim to the land so as to require the plaintiff to make the latter a party in order to make the judgment of foreclosure binding upon him.

4. **Same—Parties.**

A judgment foreclosing a lien upon real property is not binding upon a claimant of title who was not a party thereto, when the plaintiff's agent, during the agency, acquired information which, followed up, would have inevitably led to a disclosure of the character of his claim.

5. **Same—Notice.**

Defendant in an action to foreclose a lien upon real estate who by cross-complaint seeks the foreclosure of a lien of his own, is not bound by information acquired by the plaintiff, pending the action, of the claim of a third person to the land, and the failure to make such person a party does not therefore render the foreclosure of the defendant's lien ineffectual.

APPEAL from Fort Bend. Tried below before Hon. T. S. REESE.

*T. E. Mitchell* and *Slyfield & Davidson,* for appellants.

*Kirkland & Russell* and *C. C. Everett,* for appellee.

FLY, ASSOCIATE JUSTICE.—This is an action of trespass to try title instituted by appellee against appellants to recover 250 acres of land in Fort Bend County. The cause was tried by the court and resulted in a judgment for the land and for $1000 for the rents in favor of appellee.

With the correction of a few clerical errors, the following findings of fact of the trial judge are adopted as the conclusions of fact of this court:

"In 1886 Wm. H. Rice was the owner of 700 acres of land out of the Knight and White league in Fort Bend County.

"During the year J. B. Roberts and H. C. Ferguson made verbal contract with F. A. Rice, agent of Wm. M. Rice, subject to the approval of Wm. M. Rice to buy the land for $10 per acre. Roberts and Ferguson had some sort of an agreement to divide the land and sell some of it out to other parties. In the fall they went to Houston to close the trade, when they were informed by F. A. Rice that Wm. M. Rice would not sell

for less than $12 per acre. H. C. Ferguson declined to buy at this price, but Roberts concluded to buy and did buy, and Wm. M. Rice executed to Roberts a deed to the land (700 acres) for the consideration of $2000 in cash and three promissory notes executed by J. B. Roberts, payable to W. M. Rice or order, for the sum of $2161.33, each due respectively January 1, 1888, January 1, 1889, and January 1, 1890, bearing 10 per cent per annum from date, and providing for 10 per cent attorney's fees and reserving the vendor's lien. The deed and notes were dated January 1, 1887. The deed acknowledged for record in New York, February 23, 1887, and recorded March 25, 1887. There was an express vendor's lien reserved in the deed to secure the notes aforesaid. Roberts had the land divided and platted into parcels and by verbal contract agreed to sell different parcels to various parties. He sold to H. C. Ferguson 250 acres, being the same involved in this suit, and executed to him an instrument in form of a deed, but not acknowledged nor proven for record nor recorded, and signed in the presence of only one witness. This instrument is, however, dated before the deed from Rice to Roberts, to wit, December 28, 1886. The consideration for this deed was as recited in the deed, to wit, $3124, of which $781 was paid in cash and the same amount to be paid January 1, 1888, 1889, and 1890, of which he paid to Roberts at date of the deed the cash consideration of $781. He also paid, December 29, 1887, $1025, and on November 30, 1888, $859.10. This deed to Ferguson was never recorded. C. M. Ferguson, who had some verbal agreement with H. C. Ferguson (the terms of which do not definitely appear) looking to the ownership by C. M. Ferguson of all of this 250 acres or an interest therein, went into possession of this land, cleared a large part of it, and put considerable improvements on it, cultivating it through tenants during 1887 and 1888, until about August 1888, when he, C. M. Ferguson, was forced to leave the county for fear of personal violence, and has not since returned to the county. H. C. Ferguson had possession of the land, having some tenants on it during the year 1889. On the 1st of January, 1889, J. B. Roberts and wife executed to T. J. Garvey and J. J. Dickerson a general warranty deed for the whole 707 acres for a recited consideration of $4000 in cash, and the further consideration that the grantees should pay off the two promissory notes executed by Roberts to Rice, due January 1, 1889 and 1890, for $2161.33 each, with interest. This deed was recorded January 24, 1889. Garvey and Dickerson rented this 250 acres from H. C. Ferguson for the year 1889, but there seems not to have been much of the land cultivated, and the terms of this renting were very indefinite and uncertain. Garvey having died in 1889, Jake Davis was appointed administrator of his estate, and during the years 1890, 1891, and 1892 one William C. Jones, as the agent for Jake Davis, administrator of Garvey, was in possession of the entire 707 acres, including this 250 acres. During these years Jones had tenants on this 250 acres, from whom he collected the rents, which he paid to the agent of Jake Davis, administrator of T. J. Garvey. During these years 1890, 1891, and 1892 H. C. Ferguson had no connection with or

possession of the land.  On the 24th of February, 1891, Leon & H. Blum, to whom had been transferred one of the notes executed by J. B. Roberts to Wm. Rice, filed suit in the District Court of Fort Bend County against J. B. Roberts to recover a balance of $1383.64 alleged to be due on said note, with interest and attorney's fees, and to foreclose the vendor's lien on the 707 acres of land conveyed by Rice to Roberts.  Rice, who was alleged to be the holder of the other note unpaid, was made a party defendant, as were also various parties, eleven in number (including C. M. Ferguson), who were alleged to be in possession of parcels of said land, claiming under verbal agreement of some kind from J. B. Roberts.  All of the said parties answered by counsel, March 26, 1892, that is, Roberts and the parties alleged to claim under him, including C. M. Ferguson.  Rice answered September 29, 1891, setting up his ownership of the note due January 1, 1890, and praying for judgment and foreclosure against all of the defendants.  Various amended pleadings were filed by the plaintiffs and defendants respectively, and the cause was continued from term to term until April 13, 1894, when judgment was rendered in favor of Wm. M. Rice for $4041.23, and in favor of Leon & H. Blum for $2068.25, both against J. B. Roberts, with foreclosure of the vendor's lien on the 707 acres of land against all of the defendants including C. M. Ferguson.  The decree provided that the judgment in favor of Rice should be first satisfied out of the proceeds of sale of the land, and that no execution should issue against Roberts further than the order of sale upon the foreclosure.  The vendor's lien was foreclosed against all of the defendants, including C. M. Ferguson.  Order of sale issued upon this judgment, upon which the 707 acres of land was sold by the sheriff of Fort Bend County to L. & H. Blum, July 3, 1894, for the sum of $3600, and deed executed to them on the same day.  On the 5th of July, 1894, L. & H. Blum sold and by special warranty deed conveyed to Joel McCrary, the plaintiff in this suit, 707 acres of land, for a consideration of $8837.50, of which $1037.50 was paid in cash, and negotiable promissory notes payable to the order of L. & H. Blum executed for the balance as follows : one for $869 and one for $331, due December 1, 1894; one for $1593.15 and one for $606.85, due December 1, 1895 ; one for $1593.15 and one for $606.85, due December 1, 1896; and one for $1593.15 and one for $606.85, due December 1, 1897.  All of these notes were indorsed and transferred before due by L. & H. Blum except two of the smaller ones, which went into the hands of B. Adoue, assignee of L. & H. Blum, and they were all paid by McCrary about the maturity thereof.  L. & H. Blum assigned to Joel McCrary the balance unpaid upon said judgment, being all of the judgment in their favor.  McCrary sued out a writ of possession against all of the defendants in said suit, but finding H. C. Ferguson in possession, by his tenant Sampson Ferguson, of the 250 acres of land in this suit, he brought this suit against H. C. Ferguson and Sampson, and had the land seized under a writ of sequestration, September 10, 1895.  Ferguson replevied September 16, 1895, executing replevy bond with Theo. Keller, Jos. F. Mayer, G. H.

Hermann, and S. K. McIlhenny as sureties in the sum of $8000. Although the deed from J. B. Roberts to Garvey and Dickerson was a general warranty deed for the whole 707 acres, the title to all of which so far as the record disclosed was in Roberts, there was an agreement by Garvey and Dickerson that they would recognize and carry out Roberts' contract with those to whom he had agreed to sell, they paying Garvey and Dickerson, and Garvey and Dickerson making deeds to them when they had paid for their land. This was so far as it existed a verbal agreement between these parties and Garvey and Dickerson. H. C. Ferguson at the time of the execution of this deed from Roberts to G. & D. had according to his own statement paid $2665 of the purchase money of the 250 acres to Roberts. He knew both by actual knowledge at the time of the execution of the deed or immediately thereafter, and by the record thereof, of the execution of this deed, and that it conveyed the whole 707 acres without reservation to Garvey and Dickerson, and although his understanding was as he testified that Roberts was only to convey his interest in the land, he took no steps to protect himself from the possible consequences of the deed which vested the unreserved title in Garvey and Dickerson.

"I find that at the time of the institution of the suit of L. & H. Blum v. J. B. Roberts et al., the plaintiffs Blum had no notice, actual or constructive, of H. C. Ferguson's claim to the 250 acres involved in this suit,—Ferguson's deed being unrecorded, and Garvey and Dickerson being in possession of the whole 707 acres, through their agent Wm. Jones and tenants under him, who were made parties to the suit, who continued in possession during the years 1890, 1891, and 1892. There was no visible change in the possession up to the date of the judgment in the case of Blum v. Roberts, Jones still continuing to control the place, rent, and collect rents. After January 1, 1893, under an unrecorded power of attorney from H. C. Ferguson, executed January 1, 1893, Jones himself did not at any time live on the land, but acted as the agent first for Garvey's administrator and after 1st of January, 1893, for Ferguson in renting the land and collecting rents. Some time in the spring of 1894, whether before or after the date of judgment I can not determine, Walter Andrus, agent of L. & H. Blum, had actual notice of Ferguson's claim. I conclude that this must have been before judgment rendered, but probably during the term at which judgment was rendered, but it does not appear that Wm. M. Rice had any notice of such claim, unless the possession of Ferguson through Jones, after January 1, 1893, amounted to such notice.

"Public notice was given at the sale under execution, by Ferguson's attorney, of his claim. McCrary had no notice, at the time he bought from Blum, of Ferguson's claim, unless the possession of Ferguson through Jones as aforesaid amounted to such notice, but had such notice before the payment of any of the notes given by him for the purchase money. I find as a fact from all the circumstances in evidence that H. C. Ferguson knew of the pendency of the suit of L. & H. Blum v. J. B.

Roberts, and of the matters involved therein from the beginning to end of said litigation.

"The judgment in favor of Rice was to be first paid under the foreclosure, and the land didn't sell for sufficient to pay the Rice judgment. The amount of both judgments was $6108, exclusive of costs. McCrary borrowed $800 from W. C. Jones at the time of this purchase, and it seems to have been intended by Jones that he was to buy from McCrary a part of the 250 acres, but he did not do so, and I find that there was no agreement between McCrary and Jones that Jones was to be interested in McCrary's purchase.

"It seems to have been understood between McCrary and Blums, before the sheriff's sale, that Blum was to buy at the sheriff's sale and that McCrary was to buy from Blum.

"I find the rent of the land since 1895 to be $1000. From the evidence I can not find any rents prior to that time, but can only find rents for 1896, 1897, and up to the present date, 1898."

In the suit of Blum v. Garvey et al., it appeared that Garvey was dead, and his administrator was made a party, and it is contended, through the first and second assignment of error, that the judgment foreclosing the lien was a nullity, because the court could not order a sale of his interest for any debt owned by the estate on the land, but should have certified the judgment to the County Court to be paid in due course of administration. No judgment was sought or obtained by Blum or Rice against the estate of Garvey for any sum, but the estate was only made a party in order to reach its equity of redemption. It was not a class of judgment that should have been certified to the probate court. There is no merit in the contention that the judgment can not be sustained because it is stated in the conclusions of the trial judge that the land in controversy was in Brazoria County, when the suit was instituted in Fort Bend County. The testimony showed that the land was in Fort Bend County, and the finding of the court was evidently a clerical error. The proof conclusively establishes that at the time the suit was instituted the administrator of Garvey's estate was in possession of the entire tract of 707 acres of land, and that W. C. Jones was his agent who collected the rents and who paid the same to the administrator. Jones swore that he was appointed agent for H. C. Ferguson in January, 1893, but there is no evidence tending to show that any notice was received by Blum or Rice of the change of possession. In fact, there was no change in the visible occupancy of the land, the tenants remaining the same that they were when Jones was the agent for Garvey's administrator. It was proved that Andrus, the agent of Blum, was informed by Jones in 1894 that H. C. Ferguson was claiming a part of the land, but no information was given that Jones had changed principals during the pendency of the suit and was acting as agent of H. C. Ferguson. We incline to the opinion that the possession of Jones, not being open and visible, would not, under the circumstances of this case, put Blum upon notice of the title of H. C. Ferguson, because there was nothing to indicate a change of land-

lords upon the part of Jones; but a different question than that of pos-
session is presented by the information given to Andrus, the agent of
Blum, by both Jones and Ferguson, that the latter had a claim on the
land. When this information was given, Blum should have made in-
quiry of Jones and Ferguson as to the title, and failing to do so, the law
affected him with notice of such facts in reference to the title as were
within their knowledge. Bounds v. Little, 75 Texas, 316.

It must be and is admitted that if H. C. Ferguson had been in posses-
sion of the land, that in order to deprive him of his equity of redemption
he should have been a party to the foreclosure proceedings. This is true
for the reason that possession would put Blum and Rice upon notice of
the title held by H. C. Ferguson. But suppose that Ferguson had, while
the suit was pending, told Blum that he had a deed from Roberts to 250
acres of land; in order to deprive him of his equity, it is clear that it
would have been necessary to have made him a party to the suit. If
positive actual knowledge of the existence of the deed would render Fer-
guson a necessary party in order to deprive him of his equity, would not
information which, if followed up, would lead to the knowledge of the
equity, be notice of the claim of Ferguson? Clearly so. There can be
no doubt that Andrus was the agent of Blum, and while acting within
the scope of his agency came in possession of facts which if followed up
would have inevitably led to a disclosure of the character of claim made
by H. C. Ferguson to the land. The principal, under such circumstances,
was chargeable with notice of all facts that came to the knowledge of the
agent. Kauffman v. Robey, 60 Texas, 308.

It would follow from what has been stated that this judgment should
be reversed, if it did not appear from the findings of fact and from the
statement of facts that Rice obtained a judgment which was to be satis-
fied first out of the proceeds of the land, that the proceeds of the land
were not sufficient to satisfy his claim, and that Rice had no notice what-
ever of the claim of H. C. Ferguson to the land, unless he was chargeable
with notice of attornment of W. C. Jones while the suit was pending to
H. C. Ferguson, and was thereby notified of the possession of Ferguson.
As hereinbefore stated, we do not think that the secret attornment of a
tenant from one landlord to another during the pendency of a suit can
operate as a notice of possession on the part of the person to whom the
attornment is made, and thereby render it necessary to make him a party
to a foreclosure suit. There was not a circumstance which tended to dis-
close the fact that the tenancy of Jones had changed. When the suit was
instituted, and for two years thereafter, Jones was managing the farm
for the Garvey estate, whose administrator was made a party defendant,
and it did not devolve upon Rice to make inquiries to ascertain if the
tenant had attorned to some one else. If this be the rule, it might in-
flict heavy burdens upon a party seeking a foreclosure of a lien, by mak-
ing it his duty to detect any and all secret attornments made by a tenant
in possession of the land. When the suit was instituted Jones was an
agent of Garvey's estate, and so continued for two years, and it would

be contrary to common sense and reason to hold, in the absence of any circumstances to indicate an attornment to some one else, that it became the duty of Rice to institute inquiries as to whether Jones was still holding the land for Garvey or some one else. Under the operation of such a ruling a lienholder could never have any guarantee that he had cited all claimants to the land against which he sought a foreclosure. It will be noted that Rice was not associated as a plaintiff with Blum, but was a defendant whose interest was antagonistic to that of Blum. Andrus was not the agent of Rice, and the information given him in regard to the claim of H. C. Ferguson was not notice to Rice. He filed his cross-bill in the suit in which he was a defendant, asking for a foreclosure. He stood in the same relation to claimants of the land that he would had he instituted a separate and distinct suit and made the other defendants and Blum parties. He could not in that instance be affected by notice to one of the defendants, and can not in this instance be affected by notice to the plaintiff who was opposed to him in the suit.

This suit was tried in April, 1898, and the court found that the rent for 1896, 1897, and that part of the year 1898 that had elapsed before the trial, amounted to $1000, and it is contended by appellants that there is no testimony upon which to base the finding. The appellee in his testimony stated that the rental value of 175 acres of the 250 acres of land "since 1895 has been about four or five dollars per acre per annum." Taking the lowest figure given, and there is testimony to support a finding for $700 per annum, which would be largely in excess of what the court found was due for rent by appellant. Both of the appellants executed the replevin bond as principals. There is not, as claimed by appellant, any answer filed by Sampson Ferguson disclaiming any interest in the land, and it was proper to render judgment against him as well as H. C. Ferguson for the rents.

There is no error indicated requiring a reversal, and the judgment is affirmed.

*Affirmed.*

Writ of error refused.