# MARCH 1913.

### W. B. Teagarden v. R. B. Godley Lumber Company.

#### No. 2276.  Decided March 12, 1913.

**1.—Trust—Equitable Interest—Purchaser—Notice.**

One claiming an interest in land against a purchaser from the holder of the legal title, on the ground that such former legal owner had acquired title under an agreement by which plaintiff was to share with him the profits from acquiring it, asserts an equitable interest only, and has the burden of proving that the purchaser had notice of the trust and his equity, or did not pay a valuable consideration.  (P. 620.)

**2.—Same—Notice—Knowledge of Agent.**

A principal, whether natural person or corporation, is taxed with notice of facts known to his agent or officer only where such knowledge was acquired in the course of the transaction of the business of his principal.  (Pp. 620-621.)

**3.—Same—Title Held in Trust.**

The president of a corporation conveyed to it for a valuable consideration lands to which he had acquired the legal title under an agreement by which another became equitably interested.  Held that the corporation was not taxed with notice of the trust under which it was held by him, his knowledge being acquired in his personal transaction, and not as agent of the corporation. (Pp. 617-621.)

Error to the Court of Civil Appeals, Fifth District, in an appeal from Wood County.

Teagarden had judgment in the trial court against the R. B. Godley Lumber Co. in a suit brought against that defendant and others. The company prosecuted error, and on reversal with judgment rendered by the Appellate Court (135 S. W., 1109) Teagarden obtained writ of error from the Supreme Court.

*M. D. Carlock* and *Teagarden & Teagarden,* for plaintiff in error. —The testimony was amply sufficient to sustain the findings by the court that the Godley Lumber Company, and its grantees back to and including Wroten, were not bona fide purchasers of the land for value in good faith, without notice of plaintiff's rights.  Vandegrift v. Bates C. Inv. Co. (Mo.), 128 S. W., 1007; McGaskill v. United States, 216 U. S., 504; Lea v. Iron B. Merc. Co., 42 So., 418; Hoffman S. C. Co. v. Cumberland Coal Co., 16 Md., 456; Mining Co. v. Manley, 81 Pac., 50; Taylor v. Felder, 59 S. E., 844.

Where the transaction in question clearly follows and is intimately connected with a prior transaction, in which the agent was also engaged, and in which he acquired material information, or where it is clear from the evidence that the information by the agent in a former transaction was so precise and definite that it is or must be present

to his mind and memory while engaged in the second transaction, then the general rule becomes inapplicable. The notice given to or information acquired by the agent in the former transaction operates as constructive notice to the principal in the second transaction, although that principal was a complete stranger to and wholly unconnected with the proceeding or business. 2 Pom. Eq. Jur. (3d. ed.), sec. 672, and notes Mechem on Agency, sec. 721. And this principle is fully applicable to corporations. Id., sec. 670, note 2, and cases there cited. See, specially, Willard v. Denise (N. J. Err. & App.), 35 Am. St. Rep., 788, and note.

*K. R. Craig, W. H. Allen,* and *H. C. Geddie,* for defendants in error.—Burden of proof on plaintiff to show notice of equity: Cameron v. Romele, 53 Texas, 242; Oaks v. West, 64 S. W., 1036; Saunders v. Isbell, 5 Texas Civ. App., 515; Hurlburt v. DeBode, 15 Texas Civ. App., 630; Turner v. Cochran, 63 S. W., 155.

Godley's knowledge not chargeable as notice to the company: Harrington v. McFarland, 1 Texas Civ. App., 292, 293, and cases cited; Huffcut on Agency, pp. 152, 153, and cases cited; Cooper v. Ford, 69 S. W., 487; I Am. and Eng. Ency. L. (2nd ed.), 1145, and note 2; 3 Cook, Corporations (6th ed.), pp. 2369-70.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

W. B. Teagarden instituted this suit against the R. B. Godley Lumber Company, a corporation, and against R. B. Godley, J. K. Rucker, W. H. Wroten, C. C. Slaughter, Sr., C. C. Slaughter, Jr., and G. G. Wright to recover a one-third interest in 1,111 acres of land and damages. Upon the trial the judge of the District Court entered the following order upon the motion of the defendants for instruction: "Now, on this the 27th day of November, 1908, at the conclusion of plaintiff's testimony in this cause, the defendants, C. C. Slaughter, Sr., C. C. Slaughter, Jr., G. G. Wright, and the R. B. Godley Lumber Company, moved the court for peremptory instructions in their favor each, which motion being heard it is considered and adjudged by the court that plaintiff has made no cause as against C. C. Slaughter, Sr., C. C. Slaughter, Jr., and G. G. Wright, and they will not be required to further appear and defend herein. But as to defendant R. B. Godley Lumber Company said motion is denied. To which ruling of the court said defendant R. B. Godley Lumber Company excepts." The court then submitted the case as to defendant R. B. Godley Lumber Company, hereafter named Lumber Company.

The judge submitted the case to the jury under this charge:

"Gentlemen of the jury, your verdict in this case will be answers to the following questions, and such other questions propounded by either plaintiff or defendant:

"Question 1. Did plaintiff W. B. Teagarden agree with defendant Godley that he, Teagarden, would procure and furnish to Godley a large quantity of pine timbered land, in addition to the land in controversy, to be put into the venture contemplated by plaintiff and defendants Godley and Rucker? And, if so (what) was the condition

upon which the contract was entered into? Or was the agreement one entered into by and between Teagarden, Godley, and Rucker in effect and substance that they would jointly acquire such timbered land as could be bought at advantageous prices, each to share equally in the profits after paying the purchase money to whom Godley could procure to advance same?

"Question 2. Did Teagarden offer or tender any other land other than the 1,111 acres to Godley?

"Question 3. If you find that Teagarden failed to furnish other land than the 1,111 acres of land in controversy, then was he prevented from doing so by any act or default of Godley? If so, what was it?

"Question 4. Did W. B. Teagarden represent to defendant Godley and Rucker that he, Teagarden, represented the owners of the land in controversy?

"Question 5. If you find that W. B. Teagarden represented to Godley and Rucker that he represented the owners of the land in controversy, then did Godley and Rucker agree on the purchase of said land, believing that said Teagarden was the representative of the owners?

"Question 6. Was W. B. Teagarden acting as the agent of the T. R. Hyde heirs in the sale of the land in controversy?

"Question 7. If you answer question 6 in the affirmative, then did he, Teagarden, receive any compensation from said heirs in said transaction?

"Question 8. Did W. B. Teagarden agree and consent to the agreement between Godley and Wroten as to the remuneration which Wroten was to and did receive for his services in paying the purchase price of the 1,111 acres of land?

"[Signed]    R. W. SIMPSON, Judge Presiding."

The jury returned these answers:

"We the jury make answer to the questions propounded by the court, as follows:

"Answer to question 1: We find that they were jointly interested in the land.

"We, the jury, find the agreement one entered into by and between Teagarden, Rucker, and Godley, in effect and substance that they would jointly acquire such timber land as could be bought at advantageous prices, each to share equally in the profits after paying the purchase money to whom Godley should procure to advance same.

"Answer to question 2: He did.

"Answer to question 3: Yes; because Godley failed to furnish the money.

"Answer to question 4: He did not.

"Answer to question 5: We did not find it that way.

"Answer to question 6: He was not.

"Answer to question 7: He did not.

"Answer to question 8: Yes.

"[Signed]    O. B. DYKES, Foreman."

The plaintiff requested, and the court submitted, these issues:

"(1) Did plaintiff and Rucker and Godley enter into the contract to purchase land as the same is alleged in his petition?

"(2) Did plaintiff, acting for himself and Rucker and Godley, contract for the land in question and cause it to be transferred to Wroten?

"(3) In the matter of the dealings with the heirs of and the purchase of the land and the conveyance of it, was plaintiff acting on behalf of the Hyde heirs, or was he acting for Rucker, Godley, and himself?"

The jury answered:

"We, the jury, answer the questions propounded by plaintiff as follows: .

"Answer to question 1: Yes.
"Answer to question 2: Yes.
"Answer to question 3: Rucker, Godley, and himself.
 "[Signed]   O. B. DYKES, Foreman."

The defendants requested the following questions:

"Defendants ask the submission of the following issues in lieu of the first issue submitted by the court:

"(1) In the contract or agreement between plaintiff Teagarden and defendants Godley and Rucker, did Teagarden agree to procure and furnish a large amount of pine timbered lands in addition to the land in controversy to be put into the venture in contemplation?

"(2) If Teagarden agreed to procure and furnish other pine timbered lands, then was he prevented from doing so by any failure or refusal of Godley to furnish the money?"

To which the jury answered:

"Answer to question 1: Yes.
"Answer to question 2: He was.
 "[Signed]  O. B. DYKES, Foreman."

Defendants moved to set aside the finding and judgment, which was overruled, and notice of appeal was given.

Judgment was not entered at that term, but was upon motion of the plaintiff to enter judgment nunc pro tunc duly entered on the 4th day of May, 1909, in favor of plaintiff against the Lumber Company for the land, and against plaintiff as to the other defendants, from which judgment the Lumber Company sued out a writ of error, and the case was returned to the Fifth Supreme Judicial District. Upon hearing, the honorable Court of Civil Appeals reversed the judgment of the District Court as to the Lumber Company, and rendered judgment that Teagarden take nothing by his suit, from which judgment this writ of error was granted.

The judgment of the Court of Civil Appeals can be sustained alone upon the ground that there is no evidence to support a conclusion that the Lumber Company had notice of plaintiff's claim, nor notice of such facts as would require the said company to make inquiry into the condition of the title.

Accepting plaintiff's statement of the case, he, Godley, and Rucker entered into an agreement to purchase pine lands on speculation, under which agreement each party was to be entitled to one-third of the land so acquired after paying for same. Godley was to procure the money. Plaintiff undertook to find the owners, and to secure the trade. Plaintiff secured the trade for the land in controversy. Godley secured the money by having the land conveyed to one Wroten to hold in trust for the three parties until his loan should be repaid. Godley returned the money to Wroten, and the land was conveyed to Godley, who held it in trust for the three with the right to reimburse himself for the price paid for the land. At the time of the agreement between plaintiff, Godley, and Rucker, and when the land was conveyed by Wroten to Godley, the latter was a stockholder in and president of the Coleman Lumber Company and of the Godley Lumber Company. Godley sold and conveyed the land to the Coleman Lumber Company, which assumed the note to Wroten for the purchase money, and on the same day the Coleman Company conveyed the land to the Godley Company for a valuable consideration, the assumption of the purchase-money note.

The right of the plaintiff Teagarden in the land is an equity. The Godley Lumber Company has the legal title. The rule is that under this state of facts the burden was upon plaintiff to show notice to the Godley Lumber Company. Barnes v. Jamison, 24 Texas, 362; Baldwin v. Root, 90 Texas, 546, 40 S. W., 3; Rogers v. Houston, 94 Texas, 403, 60 S. W., 869.

There is no evidence of notice to either of the corporations except the undisputed fact that R. B. Godley was the president of each of them at the time the land was conveyed to him, and at the time the agreement was made between him and plaintiff for purchase of the land. By the allegations of the petition and the evidence it appears that Godley was acting for himself, and that he, in fact, sold the land to the Coleman Company for a valuable consideration. It has been well settled in this State that a principal, whether a corporation or natural person, is not affected by notice which comes to the agent or officer, unless such knowledge was acquired while in the transaction of the business of his principal. Texas Loan Agency v. Taylor, 88 Texas, 49, 29 S. W., 1057; Kauffman & Runge v. Robey, 60 Texas, 308, 48 Am. Rep., 264; 3 Cook, Corp., sec. 727; First Natl. Bank v. Loyhed, 28 Minn., 396, 10 N. W., 421; Bang v. Brett, 62 Minn., 4, 63 N. W., 1067; Buffalo C. Natl. Bank v. Sharpe, 40 Neb., 123, 58 N. W., 734; Terrell v. Bank, 12 Ala., 502; Cooper v. Ford, 29 Texas Civ. App., 253, 69 S. W., 487.

In the case of Texas Loan Agency v. Taylor, supra, Judge Gaines said: "Whether knowledge which an agent has acquired in a business other than that of his principal can be imputed to the principal is a question upon which there is a conflict of authority. In Kauffman v. Robey, 60 Texas, 308, 48 Am. Rep., 264, the doctrine is announced that the principal is not chargeable with such knowledge. We think this the correct rule. In Irvine v. Grady, 85 Texas, 120 [19 S. W., 1028], we held that the doctrine that notice to the agent is notice to the principal does not rest upon the theory of the legal identity of

the two, but that it should be 'placed upon the ground that, when a principal has consummated a transaction  *  *  *  through an agent, it is contrary to equity and good conscience that he should be permitted to avail himself of the benefits of his agent's participation without becoming responsible as well for his agent's knowledge as for his agent's act.' Since the principal, if he had conducted the transaction for himself, would in all probability have ascertained the facts which came to the knowledge of the agent in making the transaction, he should not be allowed to avail himself of the circumstance that he acted through an agent, and to say that, although his agent was affected with notice, he acted in good faith. This principle only applies where the agent acquires his knowledge in the transaction of his principal's business; and we therefore think that the doctrine of imputed notice should be limited to cases of that character.''

The right of action claimed by the plaintiff being an equity in the land and the legal title being in the Godley Lumber Company, the burden was on the plaintiff to prove that defendant had notice of his equity, or that it did not pay a valuable consideration therefor. There is no evidence that Godley represented the corporation in the purchase of the land, but the allegations of plaintiff's petition and his own evidence show that the purchase was made and deed taken to secure the land to the three persons, Godley, Rucker, and plaintiff, for sale to some sawmill for profit. Godley was acting for plaintiff, or there is no cause of action, because that is the foundation upon which the trust must rest. Therefore the information of plaintiff's trustee acquired as such cannot be imputed to a purchaser from such trustee.

It is ordered that the judgment of the Court of Civil Appeals be affirmed.

*Affirmed.*