# Rothsville Knitting Mills Assigned Estate.

*Auditors — Findings of fact — Judgment note—Corporation—Note signed by treasurer.*

Where an auditor appointed to distribute the balance in the hands of assignees of an insolvent corporation, finds as a fact that the proceeds of a judgment note signed in the name of the corporation by its treasurer, went to the treasurer personally and not to the corporation, such finding will not be reversed by the appellate court if based upon competent evidence and confirmed by the court of common pleas; and especially is this the case where the finding involves a passing on the credence to be given to oral testimony.

Argued Nov. 17, 1911.  Appeal, No. 178, Oct. T., 1911, by J. W. Baker, from order of C. P. Lancaster Co., Trust Book No. 21, page 440, dismissing exceptions to auditor's report In re Assigned Estate of Rothsville Knitting Mills. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.  Affirmed.

Exceptions to report of J. W. Brown, Esq., auditor.
The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in dismissing exceptions to auditor's report.

*John E. Malone*, for appellant.—There was no conflict of testimony before the auditor and his finding was a mere deduction from undisputed facts and therefore has not the value to which an auditor's finding of fact is ordinarily entitled: Hindman's App., 85 Pa. 466; Phillips' App., 68 Pa. 130; Sproull's App., 71 Pa. 137; Milligan's App., 97 Pa. 525; Woodward v. Carson, 208 Pa. 144.

*W. H. Keller*, of *Coyle & Keller*, with him *B. Frank Kready*, for appellees.—The auditor stood in the place of a jury.  His finding is entitled to as much weight as the verdict of a jury, and in the absence of fraud or miscon-

duct (which is not even hinted at), or clear mistake, will not be disturbed: Dutton's Est., 181 Pa. 426; Huckestein v. Kaufman, 173 Pa. 199; Hess' Est., 150 Pa. 346; Scheppers's App., 125 Pa. 598; Lewis' App., 127 Pa. 127; Pittsburg's App., 70 Pa. 142; Burroughs's App., 26 Pa. 264.

OPINION BY RICE, P. J., March 1, 1912:

This is an appeal by J. W. Baker from the decree dismissing the exceptions filed by him to the report of the auditor appointed to make distribution of the balance shown by the final account of the assignees for the benefit of creditors of the Rothsville Knitting Mills. The claim of the appellant was based on a note in his favor for $2,115 payable one day after date, with confession of judgment and usual waivers, signed "Rothsville Knitting Mills, Inc. (Seal), C. W. Grosh, Treas. (Seal)." The question in the case was, whether the original note, of which this was the last of a series of renewals, was given for a loan by Baker to the company, which the company had the benefit of, or was given for a loan by Baker to C. W. Grosh individually. Baker did not testify in the case, but Grosh testified that it was given for a loan to the company and that the money went into the company's treasury. As opposed to this testimony, the assignees and other claimants of the fund relied upon a combination of facts which they contend, and the auditor found, showed that the note was given for a loan to Grosh. These facts are so clearly and satisfactorily recited in the auditor's report that we shall not undertake to state them in another form. "C. W. Grosh who was treasurer of the company, is a son-in-law of J. W. Baker, and, on March 20, 1909, Mr. Baker gave to Grosh a check for $1,000. The check was made payable to C. W. Grosh and was deposited by him to his own account, and afterward a check was given by Grosh to the Rothsville Knitting Mills for the same amount. On May 7, 1909, the same thing was done, Baker giving to Grosh a check for $1,000, Grosh depositing it to his own account and giving his check to the Rothsville Knitting Mills for

$1,000. The books of the company, kept by Grosh, do not show any entry of any money loaned by Mr. Baker or by Mr. Grosh to the Rothsville Knitting Mills, and Mr. Grosh, testifying that he kept a ledger and cash book, in answer to a question whether, on or about March 20, 1909, there was any item showing $1,000 loaned by himself or Mr. Baker to the company, said 'I don't believe there is any there.' In answer to a later question, in reference to May 7, 1909, Mr. Grosh said, 'No, I do not see any there.' When called upon to explain how he paid for forty-four shares of stock which he held, and which was valued at $4,400, Mr. Grosh said that while they were getting the mill into shape, before the incorporation of the company, he paid for many things, such as shafting, pulleys, engine, boiler, press, and other things, out of his own account. He said the shafting was done by contract and cost about $1,900, and that he had paid the bill, and yet from an examination of the books and checks of the company it appears that a large part of the said sum of $1,900 was paid by the company after its organization and incorporation, and Mr. Grosh upon cross-examination said that he didn't pay that sum which the company paid. He furnished a statement of everything he had paid for the company and of all moneys he had paid in, and the total is $3,059, and, when asked if he had any way of showing how he had paid the difference between the statement he had submitted and the balance of his stock subscription, he said, 'I have not.' John Gray, an expert accountant, who examined the books of the company, testified that they showed no bills payable to J. W. Baker, Joseph W. Baker, C. W. Grosh, or Clarence W. Grosh, although the books do show an account of bills payable. He further testified that the books show that forty-four shares of stock were issued to C. W. Grosh and nothing to show that they were paid for. Under all the testimony your auditor is of the opinion that the two checks of $1,000 each given by J. W. Baker to C. W. Grosh were loans made by Baker to Grosh, and that Grosh turned them in to the company to

pay the balance due on his stock. Finding as a fact that Baker made no loan to the Rothsville Knitting Mills no dividend is allowed on the note for $2,015 which has been presented." Upon exceptions to the report of the auditor, the court filed a carefully considered opinion, reciting the facts in more condensed form and saying, in conclusion: "The evidence here is not only sufficient to have justified a submission of the question to a jury, but we do not understand how the auditor could have arrived at a different conclusion. There has been no proof of misconduct, fraud or clear mistake on the part of the auditor shown, and we, therefore, dismiss the exceptions and confirm the report absolutely." It is not required, in order to support the decree, to declare that the auditor and the court could not have arrived at a different conclusion. It is enough to say that the evidence was sufficient to support the auditor's finding, and, this having been approved by the court, nothing short of clear error would justify us in overturning the decree. It is strenuously argued that this is not one of those cases in which so great weight should be attached to the finding of an auditor, and we are referred to Hindman's Appeal, 85 Pa. 466, where it was said: "Where he (an auditor) reports facts directly proved by the witnesses, his report is entitled to great weight. But when the fact is simply a deduction from other facts reported by him, his conclusion is the result of reasoning the correctness of which we are as competent to judge as he. We will therefore review such result and correct it, if we discover error therein." This is sound doctrine and is supported by numerous authorities. But it must be observed that, in determining the question of fact upon which the case turned, it became necessary to pass upon the credibility and accuracy of recollection of the principal witness. Without his testimony, the conclusion would have been almost irresistible that this was not a loan to the company, but a loan to himself. At any rate, it is safe to say that, without his testimony, a finding that this was a loan to the company would have had no

sufficient foundation. For, it is to be observed, there is no evidence that the by-laws gave the treasurer of the company authority to execute promissory notes in the name of the company. Therefore, the company could not be held liable on the note, unless it directly benefited from it: Monongahela Nat. Bank v. Harmony Land Co., 226 Pa. 440. In order to substantiate the claim, oral testimony was resorted to, and was necessary. If the claimant had brought action against the company on this note, and the same evidence was presented on the trial that was presented on this audit, surely no one would contend that the court would have been justified in giving binding direction in favor of the claimant, or that a verdict against him would be so clearly against the evidence, or the weight of the evidence, that it would be the duty of the court to set it aside. The reason is plain. The jury have much better opportunity for judging of the credibility of the witnesses than has an appellate court. And so it was said in Dutton's Est., 181 Pa. 426, when the auditor's report had been approved by the orphans' court, the auditor as to questions of fact involved is in place of the jury, and his findings in regard to them, if supported by sufficient evidence, are as conclusive as a verdict. And, as the finding in the present case involves a passing on the credence to be given to oral testimony, we see no sufficient reason for departing from the general rule as to the effect to be given by an appellate court to an auditor's finding of fact which has been approved by the court having jurisdiction of the report. Thus viewing the case, and being unable to conclude that there was clear mistake in the finding, but rather concluding that it was supported by the preponderance of evidence, the assignments of error must be overruled.

The decree is affirmed and the appeal dismissed at the costs of the appellant.