TAYLOR FEED PEN CO. (RIPLEY, Intervener) v. TAYLOR NAT. BANK.†
(No. 5468.)

(Court of Civil Appeals of Texas. Austin. April 7, 1915. Rehearing Denied May 19, 1915.)

1. CORPORATIONS ☞476—POWERS—SECURING DEBT OF ANOTHER.

A note and deed of trust, executed by a corporation to secure the debt of another corporation, were illegal when executed in violation of Rev. St. art. 1164, prohibiting a corporation from using its funds for purposes other than that for which it was incorporated.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1856, 1864; Dec. Dig. ☞476.]

2. CORPORATIONS ☞476—TRUST DEED—CONSIDERATION.

A note and deed of trust, executed by a corporation to secure a debt of another corporation, were invalid for want of consideration, where the maker received no benefit from the transaction, though they were executed pursuant to an agreement made by the organizer of the former corporation before its formation, and though the resolution, authorizing the execution of the deed of trust, recited that the consideration of same was the cancellation of a prior deed of trust, where such prior deed had in fact been released several years before.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1856, 1864; Dec. Dig. ☞476.]

3. CORPORATIONS ☞14 — FORMATION — ILLEGAL PURPOSE—DEED OF TRUST—SECURING DEBT OF ANOTHER.

Where a corporation, which executes a deed of trust to secure the debt of another corporation, has, with the knowledge of the bank to which the deed of trust is given, been organized for this purpose, its organization is for an illegal purpose which invalidates the deed of trust.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 16–22; Dec. Dig. ☞14.]

4. CORPORATIONS ☞487—ULTRA VIRES ACT—EXECUTION OF DEED OF TRUST—RATIFICATION.

Where the execution of a deed of trust by a corporation to secure the debt of another corporation was ultra vires, it was incapable of ratification.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1893–1898; Dec. Dig. ☞487.]

5. HOMESTEAD ☞29—WHAT CONSTITUTES—INTENTION.

That the husband and wife had frequently gone over the land in controversy, looking for a building site, and had tentatively selected several sites thereon, did not give the land a homestead character, where they had done nothing to dedicate it, or any part thereof, to homestead purposes, a mere intention to occupy land at some future time as a homestead, unaccompanied by any act evidencing such intention, being insufficient, though actual residence is not always necessary.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 37; Dec. Dig. ☞29.]

Appeal from District Court, Williamson County; C. A. Wilcox, Judge.

Action by the Taylor Feed Pen Company against the Taylor National Bank, wherein Mrs. Willie Ripley intervened. From judgment for defendant, plaintiff appeals. Affirmed in part and reversed in part and rendered.

White, Cartledge & Graves, of Austin, for appellant. H. C. Mantor, of Taylor, and Batts & Brooks, of Austin, for appellee.

Findings of Fact.

JENKINS, J. The appellant executed to appellee its note for $6,500, and a deed of trust on 58⁴²/₁₀₀ acres of land to secure the same. It brought this suit to cancel said note and deed of trust and to remove cloud from its title to said land. In 1910, the Taylor Cotton Oil Works was indebted to appellee in a sum considerably in excess of the amount that appellee was permitted, under the national bank laws, to loan to any one customer. Appellee had a mortgage upon the property of the Oil Works to secure all of its indebtedness, and considered the same safe, but desired to reduce said indebtedness to $25,000, in order to comply with the national bank laws. F. E. Ripley was the president and general manager of the Oil Works company, and a stockholder therein. Ripley was security upon the notes of the Oil Works Company to the bank, amounting to $25,000, but was not security upon the open account due by the Oil Works Company to the bank. Ripley at that time was the owner of the land involved herein, and the president of the bank suggested that Ripley sell said land and use the proceeds in paying the open account of the Oil Works Company. Ripley replied that he did not wish to sell the land, for the reason that it was his homestead, that he intended to build upon it and make his home thereon, but that he was willing to mortgage the same to the bank. The bank declined to take a mortgage on account of Ripley's claiming the land as his homestead. In further discussing the matter it was agreed between Ripley and the president of the bank that Ripley would incorporate the Taylor Feed Pen Company, for $9,000, and deed said land to the corporation, taking its stock in payment therefor, and that the corporation would execute its note to the bank for $6,500, securing the same by deed of trust on the land, and that the proceeds of the note should be used in paying the open account of the Oil Works

Company to the bank. This was done, and it is to cancel this note and deed of trust that this suit is brought. An entry was made on the books of the Oil Works Company, showing its indebtedness to the Feed Pen Company in the sum of $6,500. The Oil Works Company subsequently became bankrupt, and Ripley, in behalf of appellant, proved up this account against it, and received a pro rata of the funds of the Oil Works Company. The case was tried before the court without a jury, and findings of fact and conclusions of law were filed herein. Without stating such findings and conclusions in detail, it is sufficient to say that the court found that the note and deed of trust executed by appellant formed a part of the consideration for which the land was conveyed by Ripley and wife to the Feed Pen Company, and that said note and deed of trust were binding upon appellant. Further facts applicable to the points decided will be stated in the opinion.

## Opinion.

[1,2] We do not deem it necessary to discuss seriatum all of the assignments of error herein. After a careful examination of the record, aided by the well-prepared briefs of counsel on either side, we have arrived at the conclusion that this case ought to be reversed and rendered in favor of appellant.

The note and deed of trust of appellant were executed without consideration. The Oil Works Company was indebted to the bank on open account as well as on note. Ripley was not liable on the open account; he did not owe the Oil Works Company anything. On the contrary, the Oil Works Company was largely indebted to him. The Feed Pen Company did not owe the Oil Works Company, and did not owe the bank. The transaction was simply one of a corporation undertaking to secure the debt of another corporation, and, in doing so, to use its funds for a purpose other and different from that for which it was incorporated. This it could not legally do. Article 1164, Rev. Stat.; Transportation Co. v. Pullman Co., 139 U. S. 25, 11 Sup. Ct. 478, 35 L. Ed. 55; Deaton Grocery Co. v. Harvester Co., 47 Tex. Civ. App. 267, 105 S. W. 556; Railway Co. v. Worthington, 88 Tex. 562, 30 S. W. 1055, 53 Am. St. Rep. 778; Bank v. Oil Co., 40 S. W. 330; Lumber Co. v. Pierson, 139 S. W. 618.

[3] It is contended by appellee, and was so found by the court, that the promise to execute the note and deed of trust on behalf of the Feed Pen Company, and the advancement of the money to the Feed Pen Company, was a sufficient consideration to sustain the note and deed of trust. The agreement to execute these instruments was made by Ripley before the corporation was formed, and was not binding upon the corporation. It was an agreement that the corporation would do that which it had no lawful right to do. If, as contended by appellant, the real purpose

in forming the Feed Pen corporation was to execute a deed of trust on this land to secure this indebtedness, then such corporation was formed for an illegal purpose, and was so formed with the knowledge, consent, and advice of appellee. Ripley and wife did not receive anything for the land except the stock of the Feed Pen corporation, and there was no agreement that they should receive any other consideration. The land did not exceed in value the amount of its capital stock, to wit, $9,000. Ripley gave too two shares of stock, one each to Wills and Martin, who were named as directors in the charter. There was never any formal meeting of the directors of the Feed Pen Company. At the time the deed of trust was executed the attorney for the bank wrote a resolution authorizing the board of directors of the Feed Pen Company to execute this deed of trust, and the same was signed by Ripley and Wills. This resolution, however, stated that the consideration for the execution of the deed of trust was the cancellation of a prior deed of trust held by the appellee on this land to secure an indebtedness of $10,000, and such is the consideration recited in the deed of trust. At the time of the execution of this deed of trust the bank, its attorney, and Ripley supposed that this prior deed of trust had never been released; but, as a matter of fact, it had been released by the bank some seven years before. Wills knew nothing of the agreement to execute this deed of trust for money to be used in payment of the indebtedness to the Oil Works Company, or for any other purpose than that recited in the deed of trust. Martin was out of the state and had no connection with the transaction and no knowledge of it.

[4] As is seen from the above statement, the appellant received no benefit from the transaction. The money was never withdrawn from the bank, but simply credited on the books to appellant, and then charged off and credited to the Oil Works Company. If this transaction was ultra vires (and we hold it so to have been), it was incapable of ratification, as will appear from the authorities above cited. In fact, there has been no attempt on the part of the directors of appellant to ratify this transaction.

[5] Mrs. Willie Ripley intervened, claiming the land in question as her homestead, and alleging that her husband had refused to join her in this intervention. The evidence shows that F. E. Ripley, husband of intervener, purchased 320 acres of land, of which the land in question is a part; that at the time of the purchase, January, 1901, Ripley intended to establish his homestead on a portion of this tract. In 1905, he sold all of said tract except the $584^2/_{100}$ acres in controversy in this case, and thereafter intended to build a home upon this land, whenever he should be able to build such a home as he wished to, and the intervener joined in such purpose. She and her husband had fre-

quently gone over the land looking for a building site, and had tentatively selected several sites thereon, but otherwise they had done nothing to dedicate this land, or any part thereof, to homestead purposes. While actual residence is not necessary, under all circumstances, to fix the homestead character upon land, yet a mere intention to occupy land at some time in the future as a homestead, unaccompanied by any act evidencing such intention, is not sufficient to give such land a homestead character. Wiseman v. Watters, 142 S. W. 134; Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832; Town Co. v. Griggs, 93 Tex. 456, 56 S. W. 49; McDowell v. Northcross, 162 S. W. 16; Parker v. Cook, 57 Tex. Civ. App. 234, 122 S. W. 422; Parson v. McKinney, 133 S. W. 1085.

For the reasons stated, the judgment of the trial court, as between intervener and appellee, is affirmed in so far as it denies the intervener homestead rights in the land, and reversed in so far as it decrees foreclosure of mortgage lien against her; and the judgment as between appellant and appellee is reversed and here rendered for appellant.

Affirmed in part and in part reversed and rendered.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
† Writ of error pending in Supreme Court.