NEWTON et al. v. HOUSTON HOT WELL IMPROVEMENT CO. (No. 454.)

(Court of Civil Appeals of Texas. Beaumont. April 25, 1919. Rehearing Denied May 21, 1919.)

1. CORPORATIONS ⟨⟩484(1) — CONTRACTS — DEBT OF ANOTHER.

The execution of paper by a corporation for the debt of another is beyond the corporate powers, in view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 1164, 1165.

2. SUBROGATION ⟨⟩41(5) — NECESSITY OF PLEADING.

Subrogation, to be available, must be pleaded.

3. CORPORATIONS ⟨⟩309(2)—OFFICERS — ADVANCE OF MONEY TO CORPORATION.

Where the owner of nearly all the shares of a corporation agreed with the president and one of the directors that they would not create any liabilities against the corporation, the fact that they advanced money to the corporation would not make the corporation liable therefor.

4. BILLS AND NOTES ⟨⟩326—COVENANTS—VALIDITY OF DEBT.

Where note was sold and assigned by indorsement on the note "without recourse" and by a further written assignment containing covenant that assignor was owner with the right to sell and assign, "and that there is now owing thereon the principal sum," naming it, with interest, followed by special agreement that no recourse was to be had against assignor as assignor or surety for the payment of the obligation, there was an express, as well as implied, warranty of the debt, which was in no wise impaired by the form of indorsement and assignment.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Suit by the Houston Hot Well Improvement Company against Emma K. Newton, J. S. Purdy, and another, in which defendant J. S. Purdy filed cross-action against defendant Mrs. Emma K. Newton. From judgment for plaintiff and for defendant Purdy, defendant Emma K. Newton appeals. Affirmed.

Vinson, Elkins & Wood and A. R. & W. P. Hamblen, all of Houston, for appellant.

Cole & Cole, of Houston, for appellees.

BROOKE, J. This suit was instituted by the Houston Hot Well Improvement Company against Emma K. Newton, John S. Purdy, and E. W. Townes, as trustee, for the cancellation of and to enjoin the foreclosure of a certain deed of trust and note executed by the Houston Hot Well Improvement Company by its president to E. W. Townes, as trustee, for the use and benefit of Mrs. Emma K. Newton, upon 30 acres of land out of the W. K. Hamblen survey in Harris county, Tex., upon which improvements consisting of a hotel and other property were situated, the said deed of trust having been given to secure a promissory note in the sum of $3,000 executed by the Houston Hot Well Improvement Company on May 17, 1915, and payable to Mrs. Emma K. Newton, and due on or before April 10, 1916, with interest thereon from date at the rate of 8 per cent. per annum. The note was assigned by Mrs. Newton to J. S. Purdy after the maturity thereof.

The plaintiff alleged that it was a corporation, organized under the laws of the state of Texas, for the purpose of the erection and repair of any building or improvements and the accumulation and loaning of money for said purposes and for the purchase, sale, and subdivision of real property in towns, cities, and villages and their suburbs, and for the accumulation and loaning of money for that purpose.

The plaintiff alleged the purported execution of said note and deed of trust by F. A. Connable, the president of said corporation, and the delivery thereof to Mrs. Emma K. Newton, and also alleged that the same was sold by Mrs. Emma K. Newton to Purdy on or about the 1st of September, 1916, after the maturity of said note. The plaintiff alleged that said note and deed of trust was executed by the said F. A. Connable, as president of the corporation, without any authority from the corporation, and that the same were not the act and deed of the corporation, and were not executed in furtherance of any purpose for which the corporation was created, and that the said note was without consideration, and that the plaintiff had never received any of the money purported to be represented by said note, and also alleged that the said J. S. Purdy and E. W. Townes, as trustee, were proceeding to foreclose the lien created by said deed of trust upon the land of the corporation, and asked for an injunction.

The appellant and the defendant John S. Purdy answered by a general demurrer and denial, and expressly denied that the note and deed of trust were acts ultra vires, and alleged that the note was given for a good and valuable consideration, and that the same was executed for said consideration, and that the corporation had received the benefit

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

therefrom, and also pleaded that, even though the note and deed of trust constituted acts ultra vires, the corporation, having received the benefit thereof, was estopped to deny its liability thereon.

The defendant John S. Purdy filed a cross-action against his codefendant, Mrs. Emma K. Newton, the appellant herein, representing that he had purchased said note for a good and valuable consideration on the 1st day of September, 1916, and that Mrs. Newton warranted that she was the true owner of said note and had full right, power, and authority to sell the same, and that there was then owing thereon the principal sum of $3,000, together with interest from the 17th day of May, 1917, and prayed that, in the event judgment should be for the plaintiff, he recover over and against his codefendant, the appellant herein, for the amount of said note and interest and attorney's fees.

The case was tried before the court without a jury, and on December 1, 1917, the court rendered judgment in favor of the plaintiff, the Houston Hot Well Improvement Company, canceling the note and the deed of trust, and removing the cloud cast upon plaintiff's title by reason of said deed of trust, and granted a permanent injunction restraining the defendant from proceeding to foreclose the same, and also rendered judgment in favor of the defendant John S. Purdy against Mrs. Emma K. Newton, the appellant herein, for the sum of $2,800, with interest thereon from the 1st day of September, 1916, at the rate of 8 per cent. per annum, from which judgment the defendant Emma K. Newton has appealed.

To this action of the court appellant duly excepted, and gave notice of appeal. The findings of fact and conclusions of law were filed in the court on December 10, 1917, to which appellant excepted. Appeal bond was filed in due time.

The court, among other things, found:

(1) That the plaintiff company was a corporation having a capital stock of $40,000, divided into 40,000 shares of the par value of $1 each; that the charter members were J. E. Newton, F. A. Connable, and L. A. Kottwitz, and the capital stock of said corporation was issued, to J. E. and Emma K. Newton, $39,600, and to F. A. Connable, L. A. Kottwitz, I. D. McCollum, and E. F. Wacey, $100 each; that the Houston Hot Well was a corporation organized on the same date as the defendant corporation, having the same charter members, with an authorized capital stock of $25,000, $25,000 of which was issued to J. E. Newton and Emma K. Newton, and $100 each to F. A. Connable, L. A. Kottwitz, I. D. McCollum, and E. F. Wacey, the said corporation having the same purposes as the plaintiff corporation. In the court's findings the plaintiff corporation,

the Houston Hot Well Improvement Company, is called the "Improvement Company," and the Houston Hot Well is called the "Land Company."

(2) That by a contract dated June 2, 1910, between the Newtons and F. A. Connable and L. A. Kottwitz, the organization of the two corporations mentioned was provided for, and the Newtons were to sell the land owned by them in the W. K. Hamblen survey, and the object of the contract being that the Newtons were to receive $25,000 in cash for the property, and when they had received that sum of money they were to transfer sufficient of their capital stock in both the Land Company and the Improvement Company to Connable & Kottwitz so that Connable & Kottwitz would own an equal amount in said corporation of the capital stock as the Newtons.

(3) That subsequent to the execution of the said contract J. E. Newton died, and the contract was continued by his widow, the appellant herein. On December 10, 1910, the Improvement Company executed its note for $2,500 to Richard Rodgers, which note the court found was really owned by Mrs. R. F. Connable, and that the name of Richard Rodgers was used only for convenience, and that as security for this note the appellant herein deposited 50 shares of her stock in the Land Company, of the aggregate par value of $5,000, as collateral security, and the Improvement Company, to indemnity such collateral, executed a deed of trust to E. R. Campbell, as trustee, for the use and benefit of the appellant herein. This note will hereafter be referred to as the "Rodgers note."

(4) That on May 1, 1911, Mrs. Emma K. Newton, the appellant herein, acting for herself individually and as executrix of her husband's will, entered into a second contract with F. A. Connable and L. A. Kottwitz, superseding the first contract, by which, in lieu of the agreement to pay the $25,000 in cash and one-half of the stock of each company, Mrs. Newton agreed to sell to Connable & Kottwitz all of the stock of both corporations for a total consideration of $30,000; that on May 17, 1915, there was a balance of $6,200 due under this second contract, which was settled as follows: The Houston Hot Well, the Land Company, gave its note for $3,200, secured by a deed of trust upon its property, to Mrs. Newton; the Houston Hot Well Improvement Company, the appellee herein, executed its note to Mrs. Newton, the appellant herein for $3,000, which is the note in controversy in this case; that at the time of the execution of these two notes Connable & Kottwitz had paid to the Improvement Company, the appellee herein, $12,000 or $15,000, which advances had been adjusted by Connable & Kottwitz between themselves, and neither was asserting any claim against the Improvement Company; that no part of these advances made by Connable & Kottwitz had

been repaid by the corporation, the appellee herein, to them or to any one else.

(5) That at the time of the settlement above referred to, when the two notes were executed, Mrs. Newton's agent, Mr. Wacey, required that the Rodgers note, which Mrs. Newton had secured through her collateral, which at that time amounted to $3,200, and which was owned by Mrs. R. F. Connable, should be surrendered in pursuance to the requirement on the part of the appellant's agent, with the following indorsement: "This note is settled in full as to maker and security;" that, after the consummation of the settlement with Mrs. Newton, the appellant herein, Connable, the president of the corporation, purporting to act for the corporation, executed a new note for $3,200 to take the place of the Rodgers note; that at the time of the delivery of the Rodgers note to Wacey with the indorsement thereon that it was settled in full as to maker and security, that being the time of the execution of the $3,000 note and deed of trust in controversy, all of the stock held by Mrs. Newton, the appellant herein, in both companies, was delivered to Connable & Kottwitz, and the contract marked fully completed.

(6) That the deed of trust securing the $3,000 note in controversy was authorized at a meeting of the directors of the Improvement Company; that there was no meeting of the directors to authorize the execution of the $3,200 note executed by the president of the corporation to Mrs. Connable in lieu of the Richard Rodgers note, which was canceled and surrendered; that the purpose of Wacey in requiring the cancellation and surrender of the Rodgers note was to relieve the appellant herein of a supposed personal liability on the Rodgers note, as well as to relieve the collateral which she had deposited to secure it.

From the above facts the court concluded that the execution of the note and deed of trust was ultra vires and without consideration moving to the appellee. The court also found that J. S. Purdy, on September 1, 1916, paid Mrs. Newton, the appellant herein, for the note in controversy, the sum of $2,800, and that the sale and assignment thereof to Purdy was evidenced by the following indorsement on the note:

"Pay J. S. Purdy, without recourse on me.
          "[Signed] Emma K. Newton"

—and was further evidenced by a written assignment, the portion of which pertinent to Purdy's cross-action is as follows:

"Said deed of trust being recorded in the mortgage records of Harris county, Texas, in Volume 130, page 231, to which deed of trust and its record reference is here made for further description; and I covenant that I am the true and lawful owner of said note, and that I have just right, full power and authority to sell, assign, and dispose of the same, and that there is now owing thereon the principal sum of $3,000.00, together with interest thereon from the 17th day of May, 1915.

"It is, however, specially understood and agreed that no recourse is to be had against me as assignor or surety for the payment of said obligation, and I have assigned and transferred same without recourse on me."

The court found, as a matter of law, that by virtue of the terms of the indorsement on said note there was an express, as well as an implied, warranty of the validity of the debt which was in no wise impaired by the indorsement and the assignment of said instrument executed contemporaneously therewith, and accordingly entered judgment in favor of Purdy, against the appellant herein, for $2,800, with interest thereon at 8 per cent. from September 1, 1916.

From the voluminous record in this case we have endeavored to state the nature and result of the suit as above. Numerous assignments of error were filed, the first three being:

(a) "The court erred in holding as a matter of law that the execution of the note by the plaintiff, and the deed of trust securing the same, was ultra vires and beyond the powers of the corporation, because it appears from the court's findings of fact that said note and deed of trust were executed in due pursuance of powers conferred upon said corporation by its charter, and, if not, that said corporation is estopped to deny the same."

(b) "The court erred in rendering judgment in this cause in favor of the plaintiff, canceling the note and deed of trust in controversy, because it appears from the findings of fact made by the court that there was a sufficient consideration moving to the plaintiff, Houston Hot Well Improvement Company, for the execution of said note, and of said deed of trust, and that the same was not ultra vires and beyond the powers of said corporation, especially in view of the finding as set forth in paragraph IX of the court's finding of fact."

(c) "The court erred in rendering judgment in favor of the plaintiff, canceling the note and deed of trust in controversy, because it appears from the court's findings of fact that there was a sufficient consideration moving to the Houston Hot Well Improvement Company for the execution and delivery of the note and deed of trust in controversy, and judgment should have therefore been rendered in favor of the defendants."

Under these assignments are many propositions, viz.:

(1) "The appellee herein, being a trading corporation, was authorized to execute the note and deed of trust in controversy, and the consideration for the execution and delivery of the said note and deed of trust being the surrender and cancellation of the Richard Rodgers note, which evidenced a valid indebtedness of the corporation in a sum approximately $3,200, the note and deed of trust were supported by a valid consideration, in that a valid obligation of the corporation equal to the amount of the note in controversy was extinguished, and therefore

the court erred in holding that the note was ultra vires and not supported by a sufficient consideration."

(2) "Even if the execution of the note and deed of trust constituted an act ultra vires, the appellee is nevertheless bound thereby, because of the consideration moving to it for the execution thereof was the surrender and cancellation of the Richard Rodgers note, which evidenced a valid obligation of the appellee in an amount equal to the note in controversy, and also the cancellation of the lien given to the appellant by the corporation on certain real estate to secure her from loss in connection with the Richard Rodgers note, she having pledged some of her stock in the Houston Hot Well Improvement Company to secure the payment thereof, and the appellee, having retained the benefits thereof, is now estopped to deny liability on said note."

(3) "Even if the execution of said note and deed of trust constituted an act ultra vires, the corporation was nevertheless bound thereby, because it received and retained the benefit of said acts, and is therefore estopped."

(5) "Appellant having required, before accepting the note and deed of trust in controversy, and transferring her stock to Connable & Kottwitz, the cancellation and surrender of the Richard Rodgers note, which evidenced a valid obligation of the corporation in the sum of approximately $3,200, the Houston Hot Well Improvement Company was authorized to execute the note and deed of trust in controversy, and the surrender and cancellation of the Richard Rodgers note constituted a sufficient consideration for the execution of the note and deed of trust involved in this controversy, and the same having been executed by proper officers of the company in pursuance of a resolution by the board of directors, the said note and deed of trust became a valid and binding obligation of the appellee, and this is true irrespective of the purpose of appellant in requiring the surrender and cancellation of the Richard Rodgers note."

(6) "The Houston Hot Well Improvement Company, being indebted to Connable & Kottwitz at the time of the execution of the note in controversy in a sum of approximately $15,000, was authorized to execute the note for the benefit of Connable & Kottwitz, and credit its obligation to Connable & Kottwitz, with said amount, and the liquidation of its indebtedness to Connable & Kottwitz to the extent of the amount represented by said money constituted a sufficient consideration for said obligation, and the appellant, having delivered her stock to said Connable & Kottwitz on the faith of said obligation, and the corporation having received a benefit from said transaction, is now estopped to deny the validity of said obligation."

(7) "The Houston Hot Well Improvement Company being indebted to Mrs. Connable on the Richard Rodgers note in a sum amounting to approximately $3,200, all of which indebtedness was a valid obligation of the corporation, and Mrs. Newton having required the surrender and cancellation of said note before accepting the note and deed of trust in controversy, and the last note and deed of trust securing the payment of same having been executed by the proper officers of the corporation, in pursuance of a resolution of the board of directors, the

Houston Hot Well Improvement Company was authorized to execute the note in controversy, and the cancellation and surrender of the Richard Rodgers note constituted a valuable consideration therefor, and the said note and deed of trust, not being ultra vires, were valid and enforceable."

On the contrary, it is urged by appellee as follows:

(1) "It may be noted from appellant's three propositions under her first assignment of error, to which this counter proposition is a reply, that all of said propositions of appellant, Mrs. Emma K. Newton, concede that the debt for which the $3,000 note involved in this suit was executed was the personal debt of F. A. Connable and L. A. Kottwitz, as claimed by appellant in its original petition, on which it went to trial, and as found by the trial judge in his findings of fact."

(2) "Such concession appearing on the part of appellant, it goes without saying that such note, being executed for the personal debt of the said Connable & Kottwitz, constituted an ultra vires act, and, standing alone, such act was not binding on the corporation, Houston Hot Well Improvement Company."

(3) "The trouble with all three of the propositions of appellant, Mrs. Emma K. Newton, under her first assignment of error, is that they do not rest upon any facts in the record, and are clearly in the teeth of the fact findings by the trial court, in this: All three of these propositions of appellant rest upon the assumption that what is known as the old Richard Rodgers note, held at the time of the transaction under consideration by Mrs. R. F. Connable, was paid off and discharged, and show that a new note was executed to Mrs. Connable to take the place of the Richard Rodgers note canceled and surrendered on May 17, 1915."

(4) "The effect of the appellant's three propositions under her first assignment of error is to try to avail herself of the doctrine of novation, but her position is unavailing, for the reason (a) that she did not plead a novation, and (b) she did not prove one."

(5) "A novation must be by common and mutual agreement; it is distinctively consensual in character; it will not be presumed; and the facts in this case showing clearly that there was no mutual agreement between all essential parties, whereby Mrs. R. F. Connable, the holder of the old Richard Rodgers note, released her indebtedness against the Houston Hot Well Improvement Company, the debt remained in existence, and no novation was shown."

(6) "No element of estoppel against the corporation is involved in the facts found by the lower court. In order for the corporation to be estopped to set up ultra vires, it must have received a benefit out of the transaction, and no benefit was shown to the appellee corporation. The surrender of the Richard Rodgers note was no benefit, because the corporation, on the same date, issued its new note in substitution thereof, nor could the surrender by Mrs. Connable to Mrs. Newton of Mrs. Newton's $5,000 stock in the Land Company operate as any benefit to the corporation, nor could the release by Mrs. Newton of her deed of trust executed by the appellee Improvement Company to indemnify Mrs. Newton on her collateral suretyship on appellee Improvement Company's

note to Mrs. Connable (the Richard Rodgers note) operate as any benefit to the Improvement Company, since that company remained liable to Mrs. Connable under a new note with Connable & Kottwitz thereon as sureties in the place of Mrs. Newton's $5,000 worth of stock in the Land Company."

(7) "While appellant's propositions base the estoppel on receipt of benefits largely on the surrender and cancellation of the Richard Rodgers note, yet the only estoppel pleaded by the defendants was that set up in the trial amendment, which urged estoppel only on the ground that Mrs. Newton had parted with her stock in the Houston Hot Well and in the Houston Hot Well Improvement Company, and since an estoppel must be pleaded, the only estoppel that appellant could urge would be that which was pleaded, and the surrender by Mrs. Newton of her stock, not to the appellee corporation, but to third parties, to wit, Connable & Kottwitz, could not possibly operate as a benefit to the appellee corporation, nor would the detriment sustained by Mrs. Newton in thus parting with her stock to Connable & Kottwitz form the basis of any estoppel against the appellee corporation."

The findings of fact made by the court show that Connable & Kottwitz, in the new contract of May 1, 1911, superseding the original contract of June 2, 1910, agreed to pay Mrs. Newton $30,000 for all her stock in both the Houston Hot Well Company and the Houston Hot Well Improvement Company. By finding of fact No. 7 the court sets out that on May 17, 1915, Connable & Kottwitz had paid Mrs. Newton all but $6,200 of this $30,000 obligation. By finding of fact No. 8 the court finds, under subdivision (b) thereof, that the Houston Hot Well Improvement Company executed the note and mortgage which is in controversy in this suit for the sum of $3,000 in payment of that amount of the $6,200 of the personal indebtedness of Connable & Kottwitz remaining unpaid.

[1] As stated, appellant's propositions concede that the debt for which the $3,000 note and mortgage were executed, and which are under attack in this case, constituted the personal debt of Connable & Kottwitz, which concession is in line with the undisputed evidence and the court's findings thereon. The authorities beyond dispute hold that the execution of paper by a corporation for the debt of another is beyond the corporate power of a corporation, and we understand appellant does not undertake to contradict the authorities on this line. In the light of the authorities hereinafter cited, we think the court's conclusion of law No. 1 is correct, this conclusion reading as follows:

"On the foregoing facts the court concludes as a matter of law that the execution of the note by the Houston Hot Well Improvement Company for the sum of $3,000, the cancellation of which is sought by the plaintiff corporation herein, being executed for the personal obligation of L. A. Kottwitz and F. A. Connable, was ultra vires, and beyond the power of

the corporation, and that the deed of trust securing the same was also ultra vires, and beyond the power of the corporation."

See articles 1164 and 1165, Vernon's Sayles' 1914 Civil Statutes; North Side Ry. Co. v. Worthington, 88 Tex. 562, 30 S. W. 1055, 53 Am. St. Rep. 778; Taylor Feed Pen Co. v. Taylor National Bank, 177 S. W. 176, 181 S. W. 534; McCaleb v. Light & Power Co., 173 S. W. 1191; Carla Land Co. v. Bank, 164 S. W. 1066; Deaton Gro. Co. v. Harvester Co., 47 Tex. Civ. App. 267, 105 S. W. 556; Lumber Co. v. Pierson, 139 S. W. 618; Monongahela Nat. Bank v. Harmony Land Co., 226 Pa. 440, 75 Atl. 687, 18 Ann. Cas. 727.

As heretofore stated, it seems that appellant's propositions concede that the debt for which the $3,000 note and mortgage were executed, and which are under attack in this case, constituted the personal debt of Connable & Kottwitz, which concession is in line with the undisputed evidence and the court's findings thereon.

It seems, from the above authorities, that the execution of paper by a corporation for the debt of another is beyond the corporate power of a corporation. It is clear, from a careful examination of the record, that there is no merit in these assignments, and they are therefore overruled.

Appellant's fourth assignment is as follows:

"The court erred in rendering judgment in favor of the plaintiff canceling the note in controversy and the deed of trust as a cloud upon the plaintiff's title, because it appears from the court's findings of fact that the firm of Connable & Kottwitz had advanced to the plaintiff company $12,000 or $15,000, which was used in the erection of the hotel on said company's property, and that on May 17, 1915, no part of advances made by Connable & Kottwitz had been repaid by the corporation to them or to any one else. In view of this finding, and in further view of the fact that the debt in controversy was primarily that of Connable & Kottwitz, the court should have adjusted the equities between the parties, and should have offset the debt in controversy against the obligation pro tanto of the plaintiff to Connable & Kottwitz, and should have held that these facts furnished a sufficient consideration moving to the Houston Hot Well Improvement Company for the execution and delivery of the note and the deed of trust in controversy."

Under this assignment are two propositions, viz.:

(a) "The court having affirmatively found that appellee was, on May 17, 1917, indebted to Connable & Kottwitz in the sum of $15,000, and the findings of the court showing that the debt secured by the note and deed of trust in controversy was primarily that of Connable & Kottwitz, it became and was the duty of the trial court to hold that these facts constituted a sufficient consideration for the execution of the note and deed of trust in controversy, and to declare the same valid, and to then adjust

the equities between the appellee and said Connable & Kottwitz, and to offset the debt in controversy against the obligation pro tanto of the appellee to Connable & Kottwitz."

(b) "The court having found that the appellee was indebted to Connable & Kottwitz at the time of the execution of the note and deed of trust in controversy in the sum of about $15,-000, and that the appellant, having transferred to said Connable & Kottwitz stock in said corporation in consideration of the note and deed of trust in controversy, it became the duty of the court to adjust the equities between said corporation and Connable & Kottwitz, as the debt was primarily that of Connable & Kottwitz, and to offset the debt in controversy against the obligation of the appellee pro tanto to that of Connable & Kottwitz."

On the contrary, it is urged:

(a) "Where the court found that Connable & Kottwitz were neither asserting any claim against the Houston Hot Well Company on May 17, 1915, and that they had adjusted between themselves advancements previously made by them to the corporation in the sum of $12,-000 or $15,000, and claimed no indebtedness against the appellee Improvement Company, there was no basis for the court to adjust any equities between the appellee, Houston Hot Well Improvement Company, and Connable & Kottwitz to offset the debt in controversy against the obligation pro tanto of the appellee to Connable & Kottwitz; there being no obligation under the finding of the court."

(b) "There not having been shown any agreement on the part of the corporation to assume Connable & Kottwitz's personal debt to Mrs. Newton in consideration of Connable & Kottwitz releasing any debt they may have had against the Improvement Company, no novation was shown which must rest on the consent of all parties."

(c) "If appellant wanted to show an indebtedness of the corporation to Connable & Kottwitz as of May 17, 1915, with the view to asking that she be subrogated to the rights of Connable & Kottwitz against appellee corporation, there would have had to have been some pleading on the part of appellant asking such relief."

(d) "Where appellant, Mrs. Newton, entered into a contract on May 1, 1911, with F. A. Connable and L. A. Kottwitz, whereby Mrs. Newton, owning practically all the stock in the Houston Hot Well Company and the Houston Hot Well Improvement Company, agreed to sell said Connable & Kottwitz said stock for $30,-000, and where said contract provided that Connable & Kottwitz should have no authority to incumber the land owned by said corporation, and should have no power to cause any liabilities against said two corporations whatever, except such liabilities as the said Connable & Kottwitz would become personally responsible for, the fact that the said Connable & Kottwitz advanced $12,000 or $15,000 for the purpose of making improvements and building a hotel on the property of the Houston Hot Well Improvement Company would not create any liability against said corporation, because the said Connable & Kottwitz, under their contract with Mrs. Newton as aforesaid, who owned practically all the stock of both companies, would have

no right or authority to incur any liabilities against either corporation, and the trial court's action in refusing to treat said $12,000 or $15,-000 so advanced by Connable & Kottwitz to the Improvement Company as a debt in their favor against said company, and in holding that they had personally adjusted this matter between themselves, finds ample explanation in the contract between Mrs. Newton and Connable & Kottwitz."

The trial court found as follows:

"I find that the firm of Connable & Kottwitz, through Connable, had advanced to the corporation $12,000 or $15,000, which was used in the erection of the hotel on the Improvement Company's property; that said advances were adjusted between Connable & Kottwitz, and neither was asserting any claim against the corporation on May 17, 1915; that Connable & Kottwitz never took any obligations from the Houston Hot Well Improvement Company except for $1,000 note payable to Connable, which was released by him, but that on May 17, 1915, no part of the advances made by Connable & Kottwitz had been repaid by the corporation to them, or to any one else."

[2] The only pleading by appellant to plaintiff's original petition was a general denial and an adoption of the pleading of codefendant J. S. Purdy, wherein Purdy pleaded a general denial and a special denial to the effect:

"That it is not true that the deed of trust executed by plaintiff was ultra vires, but, on the contrary, this defendant alleges that said note was given for a good and valuable consideration, and said deed of trust executed under a proper authority, with the knowledge and consent of all the stockholders of said plaintiff, and the execution of said note and said deed of trust was the act and deed of said plaintiff corporation."

To our minds it is evident that appellant pleaded neither a novation nor a subrogation. Subrogation has to be pleaded in order to avail appellant thereof, under the following authorities: Crow v. Fiddler, 3 Tex. Civ. App. 576, 23 S. W. 17; Taylor v. Callaway, 7 Tex. Civ. App. 461, 27 S. W. 934; Kempner v. Jordan, 3 Tex. Civ. App. 129, 22 S. W. 1001; Crebbin v. Moseley, 74 S. W. 815; Strnad v. Strnad, 29 Tex. Civ. App. 124, 68 S. W. 69.

The real answer to appellant, as contained in the above, is that, under fact finding No. 9 of the court, appellee did not owe Connable & Kottwitz anything. It is true that the finding shows that they had advanced money to appellee, which was used in the erection of a hotel on appellee's property, but it likewise finds that Connable & Kottwitz took no obligation from the Improvement Company for these advances, and neither of them were asserting any claim against the corporation by virtue of said advances on May 17, 1915, but had adjusted the same between themselves.

In our judgment, nothing is or could be a consideration, unless it was mutual, and so regarded by both parties, and under fact finding No. 9 it is clear that neither the Improvement Company nor Connable nor Kottwitz considered that there was any obligation on the part of appellee to Connable & Kottwitz. See Philpot v. Gruninger, 14 Wall. 570, 20 L. Ed. 743; Fire Ins. Ass'n v. Witkham, 141 U. S. 564, 12 Sup. Ct. 84, 35 L. Ed. 860; De Cicco v. Schweizer, 221 N. Y. 431, 117 N. E. 807, L. R. A. 1918E, 1004, Ann. Cas. 1918C, 816.

It seems to our minds that appellant is seeking to get the benefit of either a novation or a subrogation, without pleading either.

The contract of May 1, 1911, between Mrs. Newton and Connable & Kottwitz, with the indorsement of settlement thereon made by Mrs. Newton through her agent, Wacey, is as follows:

"The State of Texas, County of Harris.

"This agreement and contract made and entered into by and between Mrs. Emma K. Newton, individually and as independent executrix of the estate of J. E. Newton, deceased, party of the first part, and F. A. Connable and L. A. Kottwitz, parties of the second part, witnesseth:

"Whereas, the parties hereto have heretofore entered into a contract with reference to the purchase and sale of certain properties being out of the W. K. Hamblen survey in Harris county, Tex., and which tract of land has been subdivided and known as the Houston Hot Well subdivision; and

"Whereas, by reason of said contract above mentioned, there was organized two corporations, as follows: The Houston Hot Well, capital $25,000, and Houston Hot Well Improvement Company, capital $40,000, all of the stock of the Houston Hot Well being in the name of J. E. and E. K. Newton, except 4 shares, one of which is in the name of each of the second parties, and one in the name of E. F. Wacey, and one in the name of I. D. McCollum, the stock of the Houston Hot Well Improvement Company being issued all in the name of J. E. and E. K. Newton, except 400 shares, which is issued in 100-share lots in the name of L. A. Kottwitz, F. A. Connable, E. F. Wacey, and I. D. McCollum, respectively;

"Whereas, the parties hereto desire to amend and change said contract and enter into a new contract with reference to the sale and purchase of said lands:

"Now, it is agreed between the parties hereto that the first party does hereby agree to sell, transfer and assign all of the stock of said corporation to the second parties, subject to the following terms and conditions:

"The second parties agree to pay to the first party, her heirs or assigns, for all of the stock of both of said corporations, the sum of $30,000, same to be paid as hereinafter mentioned.

"It is agreed that the officers and directors of both of said corporations shall exist and remain the same as now until expiration of this contract. The second parties agree that they will not in any manner incumber the property herein referred to, nor cause any liabilities what-

soever, except that which they may be personally responsible for. And they shall hold the first party harmless in all respects to any liabilities now owing or to become owing by either of said corporations, or by means of her indorsement of notes or personal guarantee of open accounts, and are to pay all taxes against said property during the life of this contract.

"First party agrees to execute any and all deeds to said property or any part thereof upon any terms designated by the second parties, on condition that second parties shall at the time of the execution of such deed or deeds pay to the first party as follows: For each and every acreage tract so deeded the sum of $40 per acre for each acre described in said deed, and for each and every lot in the town site which is deeded second parties to pay to first party the sum of 20 per cent. of the contract price of said lots.

"It is agreed that, in the event that the amounts to be paid to first party as above provided shall not reach the sum of $500 per month for the first 12 months, and $600 per month for the second 12 months, and $500 per month during the balance of the life of this contract, that second parties shall on or before the 10th day of the succeeding month pay to first parties the deficit to make up the sum per month as herein provided.

"Any and all amounts received by first party from second parties shall be applied on the contract price hereinbefore mentioned.

"In the event second parties shall fail or refuse to pay regularly each month the amounts so stipulated above, or the amount stipulated to be paid at the signing of any deed, then at the option of the first party this contract is immediately closed, and the second parties agree to immediately relinquish all rights or titles or equities in and to any and all of said property and stock of both of said corporations.

"This contract shall commence and be in force from and after May 1, 1911.

"First party or her agent shall have the right and privilege to examine the sale records of the corporations for the purpose of ascertaining the true sale price of any and all of said property at any and all reasonable times.

"Witness, our hands in triplicate originals this May 1, 1911. [Signed] Mrs. E. K. Newton. Mrs. E. K. Newton, Independent Executrix of Estate of J. E. Newton, Deceased. F. A. Connable. L. A. Kottwitz."

The following indorsement is written in pen and ink at the foot of this contract:

"This contract is fully completed by partial payments and execution of deeds of trusts. [Signed] E. K. Newton, Individually and as Executrix, by E. F. Wacey."

[3] It will be seen from the above contract that Connable & Kottwitz agreed with Mrs. Newton that they would not create any liabilities whatsoever against the corporation, including appellee Improvement Company; that the only way they could create liabilities would be such as they themselves were personally responsible for, and it must be remembered that Mrs. Newton owned practically all of the capital stock which she was selling to Connable & Kottwitz for $30,000, and as the principal stockholder she had the

right to control the policy of the corporation with regard to its incurring debts and obligations; as such stockholder she could vote down any attempt on the part of Connable & Kottwitz, who owned but a trifling amount of the capital stock, to create any debts against the corporation. It must be remembered also that she continued to hold this capital stock until the settlement of May 17, 1915, which was the first time she surrendered the same to Connable & Kottwitz. With this power to control the corporation through her ownership of the capital stock, she took additional precautions to secure her right to prevent the creation of liabilities against the corporation, by taking an agreement from the president of the corporation, Connable, as well as also from Kottwitz, who assisted in the management of the corporation, and who was a director, that they would not create any obligations against the corporation. Therefore it is clear that, Connable & Kottwitz having no right to create liabilities against the corporation, the fact that they advanced money to the corporation would not make the corporation liable therefor. This clause in the contract illuminates and explains the trial court's finding that Connable & Kottwitz adjusted these advancements to the corporation satisfactorily among themselves, and did not pretend to claim any obligation against the corporation. Never having taken any written obligation from the corporation, any claim that they had against the corporation was doubtless barred by limitations, but, no pleading of subrogation or novation having been injected into the case, so as to entitle appellant to any relief by reason of any such advancement by Connable & Kottwitz to the corporation, the appellee corporation was not put on any notice to protect its right against any claim on the part of Connable & Kottwitz, which the appellant might be trying to take advantage of on the theory of either subrogation or novation.

There is no merit in this assignment and it is overruled.

[4] Appellant's fifth, sixth, seventh, and eighth assignments of error are as follows:

(a) "The court erred in rendering judgment in favor of the defendant John S. Purdy against the defendant Mrs. Emma K. Newton for $2,-800, together with 8 per cent. interest thereon from September 1, 1916, for that it appears from the court's findings of fact that the transfer and assignment of said note from the said Mrs. Emma K. Newton to the said John S. Purdy was made without recourse upon her, either as assignor or surety, for the payment of said obligation, and judgment should therefore have been rendered in favor of the said Mrs. Emma K. Newton on said cross-action."

(b) "The court erred in rendering judgment against Mrs. Emma K. Newton on the cross-action of John S. Purdy for that it appears from the court's findings of fact that said note contained the following indorsement: 'Pay J. S. Purdy, without recourse on me. [Signed] E. K.

Newton'—and that said indorsement was accompanied by a written assignment from the said Mrs. Emma K. Newton to the said Purdy, as follows, to wit: 'Said deed of trust being recorded in the mortgage records of Harris county, Tex., in volume 130, page 231, to which deed of trust and its record reference is here made for further description; and I covenant that I am the true and lawful owner of said note, and that I have just right, full power and authority to sell, assign, and dispose of the same, and that there is now owing thereon the said principal sum of $3,000, together with interest thereon from the 17th day of May, 1915. It is, however, especially understood and agreed that no recourse is to be had against me as assignor or surety for the payment of said obligation, and I have assigned and transferred same without recourse on me.' It appearing from said findings of fact that the indorsement of said note was made by the said Mrs. Emma K. Newton without recourse on her, and it further appearing that by the written assignment of said note executed by her simultaneously that no recourse was to be had against her as assignor or surety for the payment of said obligation, and that said assignment or indorsement of said note reflected the entire contract between the said Mrs. Newton and the said Purdy and her covenants with reference to the same, no implied warranty could be given effect, and under the expressed covenants and terms of the transfer and indorsement no judgment could be rendered against her on account thereof. The court therefore erred in not denying judgment to Jno. S. Purdy on his cross-action, and in not rendering judgment in favor of Mrs. Newton upon said cross-action."

(c) "This assignment not having been presented in the assignments of error filed in the trial court, is now presented as raising a question of fundamental error. The defendant John S. Purdy, having sought a recovery against the appellant herein, Mrs. Emma K. Newton, solely on the ground of an express warranty in reference to her liability on the said assignment and transfer, it was fundamental error for the court to render judgment in favor of the said Purdy on his cross-action, on the ground of an implied warranty in reference to the validity of the note, because there was no pleadings filed by the said Purdy to support a judgment on such a theory."

(d) "This assignment, not having been presented in the assignments of error filed in the trial court, is now presented as raising a question of fundamental error.

"The court having found that the defendant John S. Purdy paid to the appellant herein, Mrs. Emma K. Newton, the sum of $2,800 for the said note on September 1, 1916, it was fundamental error for the court to render judgment herein against the appellant herein in favor of the defendant John S. Purdy for the sum of $2,800, together with interest thereon at the rate of 8 per cent. per annum from September 1, 1916; the rate of interest being the rate provided for in the said note."

Under this assignment is the proposition that an indorsement of a note without recourse carries with it no implied warranty of the validity of the obligation, and also the following proposition:

"An indorsement on a note reading, 'Pay to J. S. Purdy, without recourse on me,' and the written assignment and transfer reading: 'And I covenant that I am the true and lawful owner of said note, and that I have just right, full power and authority to sell, assign, and dispose of the same, and that there is now owing thereon the said principal sum of $3,000, together with interest thereon from the 17th day of May, 1915. It is, however, especially understood and agreed that no recourse is to be had against me, as I am the assignor or surety for the payment of said obligation, and I have assigned and transferred the right of recourse on me'—which was executed contemporaneously therewith, when considered together, as it was the duty of the court to do, clearly show that it was not the intention of the parties that appellant should warrant the validity of said note."

Appellant also makes the proposition that it is fundamental error for a court to enter judgment based on an implied warranty, in the absence of allegations thereof, and especially where a recovery is sought on an express warranty.

A careful examination of the assignments and propositions thereunder leads us to the conclusion that there was no error committed by the court, and these assignments are overruled.

The conclusion of the trial court to the effect that the note and deed of trust herein were ultra vires, and without consideration, and that the Improvement Company was not estopped to assert such defense, and that both the note and the deed of trust should be canceled and set aside, is, in our judgment, amply sustained by the record in this case. Appellant's counsel seems to recognize and admit the soundness of appellee's position. Nevertheless no attempt is made to give any statement of facts which will support the theory of novation or subrogation or estoppel.

An examination of this record discloses, in our judgment, that no error was committed by the trial court in the trial of this case, and therefore the judgment of the trial court is in all things affirmed.

[1] It is a fundamental principle that no man can be deprived of his property without his own consent. It is likewise a maxim that no one can convey to another a better

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes